**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

BRIESE LICHTTECHNIK VERTRIEBS GmbH AND HANS-WERNER BRIESE,

Plaintiffs,

- against -

BRENT LANGTON, B2PRO, KEY LIGHTING, INC. AND SERGIO ORTIZ

Defendants.

No. 09 Civ 9790 (LTS) (MHD)

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SERGIO ORTIZ FOR LACK OF PERSONAL JURISDICTION**

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A.I. Trade Fin., Inc. v. Petra Bank*,
989 F.2d 76, 79 (2d Cir. 1993) .......... 5

*American Network, Inc. v. Access America/Connect Atlanta, Inc.*,
975 F.Supp. 494, 499 (S.D.N.Y. 1997) .......... 14, 15

*Andy Stroud, Inc. v. Brown*,
2009 WL 539863, at *3 (S.D.N.Y. March 4, 2009) .......... 5

*Asahi Metals Indus. Co. v. Superior Ct. of Cal.*,
480 U.S. 102, 113 (1987) .......... 15

*Bewal, Inc. v. Minnesota Mining & Mfg. Co.*,
292 F.2d 159, 167 (10th Cir. 1961) .......... 10

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .......... 13, 14, 15

*Capitol Records, LLC v. VideoEgg, Inc.*
611 F.Supp. 2d 349, 357 (S.D.N.Y. 2009) .......... 6

*Citibank v. City National*,
97 F.Supp.2d 549 (S.D.N.Y. 2000) (citing C.P.L.R. § 302(a)(3)) .......... 10

*Commissariat a L'Energie Atomique v. Chi Mei Optoelectronics Corp.*,
395 F.3d 1315 (Fed. Cir. 2005) .......... 15, 16

*Hsin Ten Enter. v. Clark Enter.*
138 F. Supp. 2d 449, 456-457 (S.D.N.Y. 2000) .......... 9

*International Shoe Co. v. Washington*,
326 U.S. 310, 316 (1945) .......... 13

*Kinetic Instruments v. Lares*,
802 F. Supp. 976, 983 (S.D.N.Y. 1992) .......... 6, 7, 8

*King County v. IKB Deutsche Indus.*,
2010 WL 1790051 (S.D.N.Y. May 4, 2010) .......... 15

*LaMarca v. Pak-Mor Mfg. Co.*,
95 N.Y.2d 210, 216 (2000) .......... 13, 14, 15

*Merck & Co. v. Mediplan Health Consulting*,
425 F.Supp. 402, 418 (S.D.N.Y. 2006) .......... 9

*Ontel Prods v. Project Strategies Corp.*,
899 F.Supp. 1144, 1149 (S.D.N.Y. 1995) .......... 6, 7

*Orthokinetics Inc. v. Safety Travel Chairs Inc.*,
1 U.S.P.Q.2d 1081, 1090-91 (Fed. Cir. 1986) .......... 10, 11

*Patent Rights Protection Group v. Video Gaming Tech.*,
603 F.3d 1364 (Fed. Cir. 2010) .......... 15

*PDK Labs, Inc. v. Friedlander*,
103 F.3d 1105, 1108 (2d Cir. 1997) .......... 5

*Power Lift, Inc. v. Lang Tools, Inc. et al.*,
227 USPQ 435 (Fed. Cir. 1985) .......... 10, 11

*Retail Software Svc. v. Lashlee*,
854 F.2d 18 (2d Cir. 1988) .......... 6

*Rex Chainbelt, Inc. v. General Kinematics Corp.*,
363 F.2d 336 (7th Cir. 1966) .......... 11

*White v. Mar-bel, Inc.*,
509 F.2d 287 (5th Cir. 1975) .......... 10, 11

*Wordtech Systems, Inc. v. Integrated Network Solutions, Inc.*,
04-cv-1971 (Fed. Cir. June 16, 2010) .......... 12

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980) .......... 13

**STATUTES**

35 U.S.C. § 271(b) .......... 10, 11, 12

C.P.L.R. § 302(a) .......... 5

C.P.L.R. § 302(a)(1) .......... 2, 6, 8

C.P.L.R. § 302(a)(3) .......... 13

C.P.L.R. § 302(a)(3)(ii) .......... 12

**OTHER AUTHORITIES**

Fed. R. Civ. P. 4(k)(1)(a) .......... 5

Plaintiffs Briese Lichttechnik Vertriebs GmbH and Hans-Werner Briese (hereinafter "Plaintiff-Counterdefendants" or "Briese"), by its undersigned attorneys Hogan Lovells US LLP, respectfully submit this Memorandum of Law in Opposition to the Motion to Dismiss Under Rule 12(b)(2) for Lack of Personal Jurisdiction by Sergio Ortiz (hereinafter "Ortiz").

## PRELIMINARY STATEMENT

Defendant Ortiz's motion should be denied because, even before discovery, the facts show that he has the requisite contacts with New York for the state's long-arm statute to apply. He is a primary actor in the underlying dispute for patent and trade dress infringement.

Hans-Werner Briese, an inventor, and his modest-sized company, Briese Lichttechnik Vertriebs GmbH, a manufacturer of high-end photographic lighting equipment, have built a hard-won reputation for innovative and high-quality products world-wide. Briese was careful to protect its innovations, and filed for – and was granted – several patents, including the U.S. patent No. 5,841,146 (the "'146 Patent") for a variable focus photographic umbrella reflector that allows for variable illumination of objects being photographed. The variable focusing feature is particularly advantageous in professional photography because it allows the user to change the quality of light, which directly affects the tonality of the photograph. In the 1990s, Briese decided to expand its business in the U.S.; and Defendant Brent Langton began distribution/renting Briese products and setup a company – named Briese USA – which a joint-endeavor between Co-Defendants Sergio Ortiz and Brent Langton.

Brent Langton focused on building the business, while Mr. Ortiz was the go-to person on equipment, repair and other technical issues. Mr. Ortiz would, amongst other things, evaluate the equipment, decide on further equipment purchases, and handle maintenance and repairs of the machines. Mr. Ortiz and Brent Langton however, were not content to remain distributors.

Mr. Ortiz began reverse-engineering Briese's products and soon began manufacturing his own knock-off "Briese" parts rather than purchasing them from Briese. Mr. Ortiz ultimately began producing and selling a knock-off of Briese's patented photographic lighting umbrella, which precipitated the filing of this action for patent and trade dress infringement.

Defendant Sergio Ortiz by his motion now seeks to prevent Briese from litigating its intellectual property rights against him in New York, notwithstanding that:

- Defendant Sergio Ortiz is a primary actor in the infringement of the '146 Patent;
- Defendant Sergio Ortiz reverse-engineered patented Briese products and had them manufactured in Eastern Europe and China, only to be imported back into the United States;
- Defendant Sergio Ortiz co-owns B2Pro a/k/a Key Lighting, which is registered in New York State and does regular and continuous business in New York City;
- Defendant Sergio Ortiz is the sole named officer of Key Lighting, serving as its President, Director, Treasurer and Secretary;
- Defendant Sergio Ortiz travels on business to attend photographic trade shows (several of which are in New York) and has regularly done so for years.

The primary basis for Defendant's motion is that of the four closely-related defendants that regularly manage and sell the infringing products in New York, he is the only one that does not happen to live here. However, Sergio Ortiz is no innocent, attenuated bystander in Defendants' infringement – he is the person squarely responsible for violating Briese's intellectual property rights in New York. As a result, Defendant's motion to dismiss should be denied on multiple grounds.

As we show below, Defendant Sergio Ortiz is amenable to jurisdiction in New York at least under C.P.L.R. §§ 302(a)(1) and 302(a)(3) and must face the foreseeable consequence of his deliberate actions in New York.

Moreover, there is no prejudice to maintain this action in New York against Sergio Ortiz. To dismiss Mr. Ortiz would force Briese to litigate essentially the exact same issues, but in a separate action. Not only would that be unjust for a modest-sized company like Briese, but it would be inefficient and taxing on the judicial system.

## FACTUAL AND PROCEDURAL BACKGROUND

Upon learning that Brent Langton, through B2Pro (formerly known as Briese USA, Inc.), was selling low-quality knock-offs of Briese's patented photographic umbrellas, Briese brought this action for patent and trade dress infringement. Later, upon learning about Sergio Ortiz's extensive involvement in making the infringing products, and the Defendant's joint-ownership of Key Lighting, Inc. (a/k/a B2Pro), Plaintiffs amended their complaint to allege infringement by Key Lighting and Mr. Ortiz. Plaintiff's Second Amended Complaint at ¶ 6.

Mr. Ortiz is no mere employee of Key Lighting/B2Pro. Together with his childhood friend, Brent Langton, Mr. Ortiz has built a photographic lighting equipment sales and rental business where he and Mr. Langton not only were the original employees but are also co-owners in the business. Declaration of Amir Ghavi, dated July 1, 2010 (hereinafter "Ghavi Decl.") at ¶ 5 (*see* Ex. 3 at 9:3-18), and Declaration of Veronica Mullally, dated July 1, 2010 (hereinafter "Mullally Decl.") at ¶ 3. From the beginning, Brent Langton handled the business while Mr. Ortiz handled the equipment, which included evaluation, purchasing, maintenance, and repair. Ghavi Decl. at ¶ 5 (*see* Ex.3. at 9:3-18). Later, Ortiz started to "machine, fabricate, and do all the prototypes in the office." Ghavi Decl. at ¶ 5 (Ex. 3 at 25:10-22). Mr. Ortiz gradually began making more and more components of Briese products, both in the U.S. and abroad. Ghavi Decl. at ¶ 5 (*see, e.g.*, Ex. 3 at 22:13-16; 61:12-13; 62:21-63:6; 64:15-18; 67:9; 68:14-69:1; 78:15-79:4; 92:10-11; 104:15-16; 107:9-20; 145:9-22; 147:4-149-3; 154:4-25; 180:2-25; 182:10-19; 189:1-12; 190:3-12). This included parts that would be substituted for genuine Briese parts

and then sold to unwitting customers in New York. Ghavi Decl. at ¶ 5 (*see* Ex. 3 at 152:3-154:25). This went on despite Mr. Ortiz's direct knowledge that Briese had a practice of enforcing its intellectual property rights. Ghavi Decl. at ¶ 5 (*see* Ex. 3 at 30:24-32:4).

In addition to being an independent and primary actor with respect to the design and manufacture of products infringing Briese's '146 Patent, Defendant Ortiz is intimately involved in running Defendant Key Lighting. He is listed as its sole officer and concurrently its President, Director, Treasurer and Secretary on secretary of state records. Ghavi Decl. at ¶¶ 3-4 (*see* Exs. 1-2). Plaintiffs Briese do not yet have any discovery from Defendants, let alone documents and things on the issue of B2Pro or Key Lighting's ownership or corporate structure. But to the extent there has been any disclosure on the issue, it points towards Mr. Ortiz's intimate involvement in the company's affairs. For example, Edward Schewe (Defendant's counsel) represented to Veronica Mullally (Briese's counsel) that Mr. Ortiz was Mr. Langton's partner in B2Pro. *See* Mullally Decl. at ¶ 3. Furthermore, Mr. Ortiz did not correct Hans-Werner Briese when he introduced Mr. Ortiz as Brent Langton's partner in Briese USA at a trade show. Ghavi Decl. at ¶ 5 (*see* Ex. 3 at 33:9-14). Further corroborating this fact, Mr. Ortiz has testified in a parallel trademark action that he is a partner in B2Pro. Ghavi Decl. at ¶ 5 (*see* Ex. 3 at 142:1-4). While an employee-officer-owner of Key Lighting/B2Pro, Mr. Ortiz attests to manufacturing photographic lighting equipment in Eastern Europe and China. Ghavi Decl. at ¶ 5 (*see* Ex. 3 at 189:1-12, 53:14-19, 68:14-20, 147:4-149-6).

Mr. Ortiz has stated that his position in Key Lighting/B2Pro is: research, development, repairs, and management of the B2Pro/Key Lighting offices. Ghavi Decl. at ¶ 5 (*see* Ex. 3 at 7:16-21). Mr. Ortiz's prior testimony and facts adduced thus far point to him as a primary actor in the infringement of Briese's patent and he has likewise induced and contributed to

infringement of Briese's '146 Patent by his co-Defendants and New York domiciles B2Pro and Key Lighting.

## ARGUMENT

The tortfeasor should not be allowed to dictate jurisdiction and venue. This is especially so here, where the named Defendants are not acting as four separate individuals – but instead as a unitary whole – with identical interests, identical claimed rights, and identical counsel. Defendant Ortiz's failure to show that any of his interests would be impaired or impeded in any material way by having these claims litigated in New York is fatal to his motion.

## II. THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT ORTIZ

In opposing Defendant's motion to dismiss, Briese need only make a *prima facie* showing that the non-domiciliary Defendant at issue, Sergio Ortiz, is amenable to personal jurisdiction in New York. *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79 (2d Cir. 1993). To determine whether a *prima facie* showing has been made, "[t]he Court must accept the allegations of the plaintiff's complaint and affidavits as true, and all doubts are resolved in favor of the plaintiff, notwithstanding any controverting presentation by the moving party." *Andy Stroud, Inc. v. Brown*, 2009 WL 539863, at *3 (S.D.N.Y. March 4, 2009).

This Court's jurisdiction over New York residents Brent Langton, B2Pro, and Key Lighting, Inc. is undisputed. Defendant's motion centers on the contention that, as a non-resident, Sergio Ortiz is not amenable to suit in New York. This conclusion is wrong, and unsupported by the facts applied to the relevant legal authority in this judicial district.

### A. This Court has Specific Jurisdiction Over Sergio Ortiz Under C.P.L.R. § 302(a)

New York law determines this Court's jurisdictional reach over Defendants. *See PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997); *see also* Fed. R. Civ. P. 4(k)(1)(a). If a court determines that jurisdiction exists under New York's C.P.L.R., the court must then address whether the exercise of jurisdiction comports with due process. *Capitol Records, LLC v. VideoEgg, Inc.* 611 F.Supp. 2d 349, 357 (S.D.N.Y. 2009).

**1. C.P.L.R. § 302(a)(1) Confers Personal Jurisdiction Over Defendant Ortiz Because Mr. Ortiz Transacts Business Through His Agents Key Lighting and B2Pro in New York**

Under N.Y. C.P.L.R. § 302(a)(1), a non-domiciliary defendant is subject to personal jurisdiction if he or she "through an agent: transacts any business within the state or contracts to supply goods or services to the state" so long as the cause of action "aris[es] from any" such business transaction. New York abandoned the "fiduciary shield" doctrine such that it is possible to obtain jurisdiction over a corporate officer or employee based upon his contacts in New York, even if his activities were performed solely in a corporate capacity. *Kinetic Instruments v. Lares*, 802 F. Supp. 976, 983 (S.D.N.Y. 1992). The Second Circuit has held that this altered view in New York means that a corporation can act as an agent for an individual for the purposes of New York's long-arm statute C.P.L.R. § 302(a)(1). *Id.* at 984 (citing *Retail Software Svc. v. Lashlee,* 854 F.2d 18 (2d Cir. 1988). The *Retail Software* court expressly held that there was personal jurisdiction under New York's long-arm statute for out of state individual defendants who were primary actors in the transaction and not merely attenuated parties. *Retail Software*, 854 F.2d at 22.

**a) Sergio Ortiz Transacts Business in New York Under C.P.L.R. § 302(a)(1)**

Defendants admit that Key Lighting and B2Pro transact business in New York. *See* Defendants B2Pro and Brent Langton Answer to Second Amended Complaint at ¶ 4. And in his

motion, Defendant Ortiz concedes that this Court would have personal jurisdiction over him if Key Lighting or B2Pro transacted business in New York as Ortiz's agent. Defendant's Memorandum of Law in Support at 6. In fact, *Ontel Prods*, cited in Ortiz's motion, supports conferring personal jurisdiction over Mr. Ortiz if plaintiffs make a showing that he had personal involvement in the making or importing of infringing products, and he exercised decision-making authority over the corporate defendants. *See Ontel Prods v. Project Strategies Corp.*, 899 F.Supp. 1144, 1149 (S.D.N.Y. 1995) (requiring personal involvement in underlying activity of the suit and decision-making authority to confer personal jurisdiction over out of state company executive).

Although Ortiz cites the correct law, he fails to properly apply it to the facts at hand. As alleged in Plaintiffs' amended complaint and as described above, by designing, manufacturing, and importing knock-off photographic umbrellas that infringe Briese's patents and trade dress, Ortiz is directly involved in the infringing activity. Specifically, Mr. Ortiz reverse-engineered patented Briese products. Furthermore, Mr. Ortiz boasts in deposition testimony that he developed many of the non-authentic Briese components. Ghavi Decl. at ¶ 5 (*see, e.g.,* Ex. 3 at 61:12-63:6; 67:9; 68:14-69:1; 78:15-79:4; 92:10-11; 105:15-16). Mr. Ortiz also describes how he machined, fabricated and built prototypes in the B2Pro's offices. Ghavi Decl. at ¶ 5 (*see* Ex. 3 at 9:3-18). Later, he would travel overseas, source and supervise manufacturing and production of the infringing B2Pro products in Eastern Europe and China for importation and sales/rental in the U.S. and in particular, in New York. Ghavi Decl. at ¶ 5 (*see* Ex. 3 at 68:14-69:1; 188:15-16). Not only is Ortiz a primary actor in the infringing activity, but by being a founder, owner, and key - if not the only - officer of Key Lighting and B2Pro, he has a decision-making authority over the two named corporate Defendants. Ghavi Decl. at ¶¶ 3-4 (*see* Exs. 1-

2). As such, Defendant Ortiz is subject to personal jurisdiction of this Court through an agency theory.

The facts here parallel the facts in *Kinetic Instruments*, where plaintiff was able to obtain personal jurisdiction over a corporate executive by showing the patent infringement occurred "with [the executive's] knowledge and consent and for his benefit, and that he exercised control over [the company] in the matter." *Kinetic Inst.*, 802 F.Supp. at 985. In that case, plaintiff alleged that the corporate executive was involved in the manufacture and sale of the allegedly infringing product and that he exercised control as the President and was directly responsible for the company's decision to continue infringing the patent-in-suit. Plaintiff in *Kinetic Instruments* also alleged that the executive profited from the sale of the accused product. Likewise, Defendant Ortiz is listed as the President, Director, Treasurer and Secretary of Key Lighting/B2Pro. Ghavi Decl. at ¶¶ 3-4 (*see* Exs. 1-2). Defendant Ortiz clearly has knowledge of infringement and it occurred with his consent, as he is responsible for the design, manufacture and importing of the products that infringe Briese's '146 Patent and trade dress. Ortiz also benefits from the sales of the infringing goods because he a part owner in the business. Ghavi Decl. at ¶¶ 3-4 (*see* Exs. 1-2). Therefore, this Court has personal jurisdiction over Defendant Ortiz because, through his corporate agent Key Lighting/B2Pro, he clearly transacts business within New York and, as explained below, those transactions precipitated this cause of action because the products sold infringe Briese's '146 Patent and trade dress.

**b) Briese's Claim Arises Out of Ortiz's Contacts With New York**

The requirement in C.P.L.R. § 302(a)(1) that Briese's cause of action must "arise out of" Defendant Ortiz's contacts with this forum is easily met. A cause of action arises out of a particular transaction in New York "if there is a 'substantial relationship' or 'articulable nexus' between the activity and the lawsuit." *John Wiley & Sons, Inc.*, 2009 WL 176003 at *4 (citations

omitted). There is unquestionably a substantial relationship between Briese's claims of patent and trade dress infringement and the sale of infringing products by B2Pro and Key Lighting, Inc. in New York.

**c) Defendant's Cited Cases Support Conferring Personal Jurisdiction on Ortiz or Are Otherwise Inapposite**

Contrary to Defendant's contentions, his actions do rise to the level of conferring personal jurisdiction in New York. Defendant misreads his own cited cases, which largely weigh in favor of granting personal jurisdiction over Mr. Ortiz here. In *Merck*, cited by Defendants, the court granted the motion to dismiss not because of a defect in the complaint (as Defendant insinuates in his brief at 5), but instead because the plaintiff there failed to make any allegations specific to the CEO's culpable acts in *plaintiff's opposition to the 12(b)(2) motion*. That is clearly not the case here. This Opposition is replete with examples, and Briese has plainly explained and properly alleged how Mr. Ortiz was a primary actor and directly infringed through his actions of manufacturing unauthorized copies of Briese's patented photographic umbrellas. Moreover, Mr. Ortiz also induced and contributed to B2Pro/Key Lighting's infringement by admitting that he reverse-engineers and designs the infringing products at B2Pro/Key Lighting and then manufactures them in China and imports them for sale in New York. This is more than enough to sustain personal jurisdiction, even looking to Defendant's cases.[1] The *Merck* case teaches that "[a]t the pleadings stage, a plaintiff is required only to make a prima facie showing of jurisdiction" and "all pleadings and affidavits must be construed in the light most favorable to [plaintiffs] and all doubts must be resolved in . . . plaintiffs' favor." *Merck & Co. v. Mediplan*

---

[1] The other cases to which Defendant cites are likewise inapposite. Defendant cites to *Bradley v. Staubauch*, but in that case, the CEO Staubauch was dismissed only because he was not alleged to be a "primary actor" in the underlying dispute and importantly, Defendants fail to mention that the court retained personal jurisdiction over Staubauch's co-defendant, a senior executive with the company, for little more than an allegation that he was a "key player" in the transaction that gave rise to the complaint. *See Bradley v. Staubach*, 2004 WL 830066 * 2-3 (S.D.N.Y. at 2004). Similarly, the plaintiffs in *Karabu* failed to allege the corporate officers were "primary actors" in the transaction that gave rise to the litigation, otherwise the court notes that it would have granted personal jurisdiction. *See Karabu Corp. v. Gitner*, 16 F.Supp. 2d 319, 324 (S.D.N.Y. 1998). Lastly, the *Hsin Ten Enter.* court dismissed the defendant sole proprietor from that suit merely because plaintiffs failed to ever make any allegations against the individual defendant – the court did not rule based only on the complaint. See *Hsin Ten Enter. v. Clark Enter.* 138 F. Supp. 2d 449, 456-457 (S.D.N.Y. 2000).

*Health Consulting*, 425 F.Supp. 402, 418 (S.D.N.Y. 2006) (citations omitted). To the extent any ambiguities exist as between the parties' contentions, for the purpose of Defendant's motion, they are to be resolved in favor of Plaintiffs Briese. *Id.*

### 2. C.P.L.R. § 302(a)(3) Confers Personal Jurisdiction Over Defendant Ortiz Because His Actions Cause Foreseeable Harm in New York and He Derives Substantial Revenue From Interstate Commerce

Independently, Defendant Ortiz is also subject to personal jurisdiction in New York under C.P.L.R. § 302(a)(3) because his out-of-state acts cause harm within New York by Defendants Key Lighting and B2Pro. New York's long-arm statute includes a section specifically dealing with out-of-state acts that cause injury in New York State. This provision confers jurisdiction over a defendant where the cause of action "arises out of a tort committed outside of New York but the tort causes harm within New York, the defendant expected or should reasonably have expected the act to have consequences in the state, and the defendant derives substantial revenue from interstate or international commerce." *Citibank v. City National,* 97 F.Supp.2d 549, 568 (S.D.N.Y. 2000) (citing C.P.L.R. § 302(a)(3)).

Plaintiff Briese has filed this action for infringement of its intellectual property under federal laws. For example, federal patent laws provide that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). The Federal Circuit has broadly read § 271(b) to include liability of corporate officials who actively aid and abet their corporation's infringements. *See Power Lift, Inc. v. Lang Tools, Inc. et al.*, 227 USPQ 435, 437 (Fed. Cir. 1985) (affirming judgment against corporate executive for infringement under § 271(b)).[2]

[2] In support of the proposition that corporate officials who actively aid and abet corporate infringements are individually liable as infringers, Power Lift cites, *inter alia*: *White v. Mar-bel, Inc.*, 509 F.2d 287, 292-93 (5th Cir. 1975) (officer was moving force which resulted in the manufacture of the accused device); *Int'l Mfg. Co. v. Landon, Inc.* 336, F.2d 723, 728-29 (9th Cir. 1964) (officer or "alter ego" was "moving, active conscious force behind [corporation's] infringement" and "is therefore subject to personal liability without regard to whether [the corporation] is his alter ego"); *Bewal, Inc. v. Minnesota Mining & Mfg. Co.*, 292 F.2d 159, 167 (10th Cir. 1961) (corporate officer "aided, participated in, approved, ratified, and induced" infringement by corporation).

In *Orthokinetics*, the Federal Circuit has held that "[i]nfringement is a tort, and officers of a corporation are personally liable for tortious conduct of the corporation if they personally took part in the commission of the tort or specifically directed other officers, agents, or employees of the corporation to commit the tortious act." *Orthokinetics Inc. v. Safety Travel Chairs Inc.*, 1 U.S.P.Q.2d 1081, 1090-91 (Fed. Cir. 1986). The Federal Circuit in that case affirmed a jury's finding that stockholders and officers of a corporation were personally liable for acts of patent infringement of the corporation. *Id.* at 1090. These individual defendants were each executives and, between the three of them, owned all of the stock of the corporate defendants. *Id.* at 1091. The evidence adduced at trial established that the three individual defendants were directly responsible for the design and production of the infringing products and they stood to benefit from the sales of the infringing products through their ownership in the company. *Id.* The *Orthokinetics* court noted that "it is well settled that corporate officers who actively aid and abet their corporation's infringement may be personally liable for inducing infringement under § 271(b), regardless of whether the corporation is the alter ego of the corporate officer. *Id.* (citing *Power Lift, Inc.*, 227 USPQ at 437. The court further noted that "[t]he cases are legion in which courts have recognized and imposed personal liability on corporate officers for participating in, inducing, and approving acts of patent infringement." *Id.* at 1091 (citing *White v. Mar-bel, Inc.*, 509 F.2d 287 (5th Cir. 1975); *Rex Chainbelt, Inc. v. General Kinematics Corp.*, 363 F.2d 336 (7th Cir. 1966) Chisum, *Patents*, § 16.06, at 16-76 to 16-85 (1986)).

Subsequent Federal Circuit cases have found corporate executives individually liable for infringement by their companies without piercing the corporate veil. In *Fromson v. Citiplate*, the Federal Circuit admonished individual defendants that they "should have known all along" they could be liable for their corporation's actions where they "plainly participated in and approved of the infringement of the plaintiff's patent." 12 USPQ 2d 1299, 1302-1303 (Fed. Cir. 1989). In

that case, just like here, between the two of them the defendants were the: founder, president, chairman, treasurer, and secretary of the corporation and jointly owned the corporation. *Id.* at 1302-1303. The *Fromson* court also noted that, like in the present case, one of the individual defendants "conceived and developed the infringing [product]." *Id.* at 1302. In fact, Federal Circuit has very recently reaffirmed the idea that a corporate officer may be held personally liable for indirect infringement where a corporation was a direct infringer. *See Wordtech Systems, Inc. v. Integrated Network Solutions, Inc.*, 04-cv-1971, (Fed. Cir. June 16, 2010).

The above-mentioned cases are squarely on point to the facts in this litigation. Specifically here, at Mr. Ortiz's direction as a founder, owner, and a corporate officer, Key Lighting and B2Pro directly infringe Briese's '149 Patent and trade dress in New York by selling the knock-off umbrellas. In addition, Defendant Ortiz is personally involved in the commission of the infringement by copying, manufacturing, and importing the infringing products. Because Defendant Ortiz personally took part in the commission of infringing acts and because he specially directed B2Pro and Key Lighting to infringe, he is personally liable for inducing infringement under §271(b) and contributing to infringement under §271(c) of the Patent Laws.

It is absolutely foreseeable that copying, manufacturing, and importing products to be sold in New York that infringe a U.S. patent and a trade dress would yield liability in New York. Therefore, it is reasonable to assume that Defendant Ortiz knew that manufacturing, importing and then ultimately selling infringing products through Key Lighting/B2Pro in New York would have consequences here. But even if he did not know, he should reasonably have expected that his wrongful acts will have consequences in New York. *See* N.Y. C.P.L.R. § 302(a)(3).

Defendant Ortiz also meets the last requirement of § 302(a)(3) because, as an owner of Key Lighting/B2Pro, he derives substantial revenue from interstate commerce. *See* N.Y.

C.P.L.R. § 302(a)(3)(ii). By setting up his operations to be bi-coastal, Mr. Ortiz almost by definition derives substantial revenue from interstate commerce. Also, Mr. Ortiz claims that in addition to the largest photography markets of Los Angeles and New York, he also serviced other major markets such as Chicago, Miami, San Francisco or "anywhere where there is anything happening in photography, we are there." Ghavi Decl. at ¶ 5 (*see* Ex. 3 at 132:23-133:7). Thus, it is undisputed that as a co-owner of Key Lighting/B2Pro, Mr. Ortiz derives substantial revenue from interstate commerce.

Therefore, because Ortiz's commission of a tort (indirect infringement) outside of New York causes harm (patent and trade dress infringement) within New York, the harm is foreseeable, and Ortiz derives substantial revenue from interstate commerce, his deliberate actions confer this Court with personal jurisdiction over him under New York's long-arm statute. C.P.L.R. § 302 (a)(3).

### B. The Exercise of Personal Jurisdiction over Sergio Ortiz Comports with Due Process Because He Has Sufficient Contacts with New York and Litigating Briese's Claims in New York Is Reasonable

Separately from satisfying New York's long-arm statute, a defendant must have certain "minimum contacts with the [forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted). A non-domiciliary tortfeasor has "minimum contacts" with the forum State – and thus may reasonably foresee the prospect of defending a suit there – if it "purposefully avails itself of the privilege of conducting activities within the forum State." *LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 216 (2000) (*quoting World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The court may also consider other factors in determining whether the exercise of personal jurisdiction comports with due process. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985).

### 1. Sergio Ortiz's Purposeful Availment in New York is Sufficient to Satisfy the "Minimum Contacts" Requirement of Due Process

It is unquestionable that Defendant Sergio Ortiz has purposefully availed himself of New York's benefits by registering his company to do business in the state. *See* Ghavi Decl. at ¶ 3. Mr. Ortiz was involved in setting up Key Lighting/B2Pro/Briese NY which directs activities towards New York residents and is located at 401 West Street in New York City. Mr. Ortiz took purposeful action, motivated by the wish to sell products in one of the most lucrative photographic markets in the world. Even if he never visits New York – which is not a credible claim[3] – Mr. Ortiz, by his own admission, regularly repairs products from the New York office and sends them back to New York. This suffices to show purposeful availment of New York's jurisdiction. *See American Network, Inc. v. Access America/Connect Atlanta, Inc.*, 975 F.Supp. 494, 499 (S.D.N.Y. 1997) (finding a reasonable expectation of consequences in New York thus denying a 12(b)(2) motion where defendant had no office, property, or employees in New York). In addition, through his contacts with New York, as an owner in the business, Defendant Sergio Ortiz receives a direct commercial benefit from commerce in New York. *See id.*

There also exists sufficient nexus between Defendant's contacts with New York and Briese's claims. As noted above, each act of Defendant Sergio Ortiz's importing, offer to sell, or sale in New York is an act of infringement of Briese's patent and trade dress. It is Defendant Ortiz's commercial activities that are the crux of the suit and both violate Briese's patent rights and cause confusion amongst customers.

[3] Plaintiffs note that although Mr. Ortiz has submitted a declaration in which he stated that he does not visit New York for business, it is highly doubtful that Mr. Ortiz never visits the New York premises of his business. Moreover, because he also claimed, in a prior deposition, to have visited "hundreds" of photographic trade shows, and because New York frequently hosts many such shows, it is entirely reasonable to assume that Mr. Ortiz did visit New York in connection with his business. Ghavi Decl. at ¶ 5 (*see* Ex. 3 at 129:21-130:5).

### C. The Court Should First Grant Limited Discovery On the Issue if It is Inclined Not to Exercise Personal Jurisdiction Over Defendant Ortiz

Even if the Court does not find the facts alleged by Plaintiffs sufficient to confer personal jurisdiction on Defendant Ortiz, given Ortiz's many and varied statements – under oath – that contradict his motion to dismiss, Plaintffs should be allowed to take limited and expedited discovery on the issues of Ortiz's involvement in the named corporate Defendants and also his contacts in New York. *See e.g., Patent Rights Protection Group v. Video Gaming Tech.*, 603, 1372 F.3d 1364 (Fed. Cir. 2010) (vacating trial court's grant of 12(b)(2) motion and remanding for discovery on jurisdictional issues); *see also Commissariat a L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315 (Fed. Cir. 2005); *King County v. IKB Deutsche Indus.*, 2010 WL 1790051 *7 (S.D.N.Y. May 4, 2010).

## CONCLUSION

Because Defendant Sergio Ortiz is a primary actor in the patent and trade dress infringement of Briese's intellectual property rights, and because this infringement is performed by the named corporate Defendants Key Lighting and B2Pro (in which he has ownership and is an executive) under Mr. Ortiz's control, New York's long-arm statute confers jurisdiction on this Court. Therefore, Defendant Ortiz's motion should be denied.

Dated: New York, New York
July 1, 2010

Respectfully submitted:

M. Veronica Mullally (MM-9985)
Gary Serbin (GS-7332)
Amir Ghavi (AG-5384)
HOGAN LOVELLS US LLP
875 Third Avenue
New York, New York 10022
Tel: (212) 909-0600
Fax: (212) 918-3100

*Attorneys for Plaintiffs Briese Lichttechnik Vertriebs GmbH and Hans-Werner Briese*