UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
BRIESE LICHTTECHNIK VERTRIEBS
GmbH and HANS-WERNER BRIESE,          :

               Plaintiffs,            :      MEMORANDUM & ORDER

          -against-                   :      09 Civ. 9790 (LTS)(MHD)

BRENT LANGTON, B2PRO, KEY             :
LIGHTING, INC. and SERGIO
ORTIZ,                                :

               Defendants.            :
------------------------------------x

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE:


     By Memorandum and Order dated January 10, 2011, this court granted in large measure a motion by plaintiffs to impose sanctions on defendants and their counsel for a broad range of discovery misconduct. Briese Lichttechnik Vertriebs GmbH v. Langton, 2011 WL 280815 (S.D.N.Y. Jan. 10, 2011). Among other forms of relief that we authorized to compensate for the substantial prejudice visited on plaintiffs by virtue of the demonstrated misconduct of defendants and counsel, we permitted plaintiffs to recover not only the expenses, including reasonable attorney fees, incurred in preparing their sanctions motion, but also any such expenses borne as a result of such misconduct of their adversaries. Id. at *12-13. We further provided that the expense award was to be imposed

jointly and severally on defendants and their attorney, who we found co-responsible for much if not all of the derelictions of his clients. Id. at *12.

Plaintiffs subsequently submitted papers in support of a fee-and-expense award. They seek an award of $183,967.00 in fees and $11,679.39 in costs. Defendants have opposed, arguing principally that the hours claimed are excessive and that some of the costs are either not compensable or unjustified.

ANALYSIS

1. General Lodestar Standards

We previously summarized the basic standards for assessing an application of this kind when we awarded plaintiffs a sum of money on a similar, if smaller, fee application last year. See Briese Lichttechnik Vertriebs GmbH v. Langton, 2010 WL 3958737, *1-2 (S.D.N.Y. Oct. 4, 2010). In brief, the court should initially derive a so-called lodestar figure, that is, a "presumptively reasonable fee", Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 190 (2d Cir. 2007), based on "(1) a consideration of the number of hours actually spent by counsel

and other personnel that are deemed reasonably necessary to the successful outcome for the client and (2) the setting of reasonable hourly rates for counsel, a criterion most recently, if opaquely described as 'the rate a paying client would be willing to pay.'"[1] Briese, 2010 WL 3958737, at *1 (quoting Arbor Hill, 522 F.3d at 190).[2] The lodestar is not "conclusive in all circumstances", but "there is 'a strong presumption' that the lodestar figure is reasonable." Perdue, 130 S. Ct. at 1673; accord Millea, 2011 WL 3437513 at *8.

2. Hourly Rates

To determine the appropriate hourly rates for this purpose,

---

[1] In a recent opinion the Supreme Court has articulated a somewhat different description of what the goal of the analysis is, albeit in the context of a civil rights case, when it said that "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." Perdue v. Kenny A., 130 S. Ct. 1662, 1672 (2010).

[2] The term "lodestar" has recently had a somewhat up-and-down fate in the Second Circuit. After years of usage of this term, the Second Circuit seemed to banish it in the series of Arbor Hill opinions, see Arbor Hill, 522 F.3d at 188-90, but it has since made a comeback after the Supreme Court utilized it last year without questioning its appropriateness as a descriptor of the required fee analysis. Perdue, 130 S. Ct. at 1672-73. See Millea v. Metro-North R.R. Co., __ F.3d __, 2011 WL 3437513, *8-10 (2d Cir. Aug. 8, 2011).

the court "looks to 'the prevailing market rates in the relevant community.'" Perdue, 130 S. Ct. at 172 (quoting Blum v. Stenson, 465 U.S. 886, 895 (1984)). In our prior fee decision, we noted that the hourly rates charged to plaintiffs for essentially the same set of attorneys -- ranging from $629.00 for senior partner to $416.00 for mid-level associates -- were not contested by defendants. Briese, 2010 WL 3958737 at *2. In this instance the rates that plaintiffs request encompass fees for the senior partner at $629.00 and lesser rates for the other attorneys, bottoming out at $302.00 for the most junior attorney. (Mullally Decl. ¶¶ 7-11).[3] Again, defendants do not quarrel with these rates. (Defs.' Opp'n at 19).

One notable gap in plaintiffs' proffer is that they seek compensation for more than 42 hours of work attributable to various paralegals and other non-attorney staff (referred to as law clerks), but they fail to specify what rates the law firm charged plaintiffs for those services, although we are told that paralegals are normally billed at $196.00 to $234.00 per hour and that the firm gave plaintiffs a 15 percent discount on these rates as well as on the lawyer fees. (Mullally Decl. ¶¶ 3-4). Plaintiffs also do not identify which of the non-lawyer staff are paralegals and which

---

[3] These rates reflect a 15 percent discount from the firm's normal hourly charges. (Mullally Decl. ¶ 4).

are law clerks, nor do they provide any hourly rates for the law clerks. Under these circumstances, we are left to infer from the work descriptions who the paralegals are, and will award only the minimum rate for their work, that is, $196.00 less 20 percent, or $156.80 per hour.

3. The Amount of Hours

In plaintiffs' application, they attach time records for the work in question, which started on June 14, 2010 and extended to January 21, 2011. The tasks encompassed by these records begin with plaintiffs' preparation of papers opposing a motion to dismiss by defendant Sergio Ortiz and end with the preparation of the fee application. (Mullaly Decl. Exs. 9 & 10).

Based on our review of the time records -- which have been redacted to exclude the many tasks that plaintiffs concede were not generated by misconduct identified by the court in its decision -- we calculate that plaintiffs are seeking compensation for approximately 363 hours in attorney time expended by five lawyers and approximately 42 hours by non-attorneys. Unfortunately, although plaintiffs list the number of hours for each assertedly pertinent task, they do not provide totals for each attorney or

staffer or for counsel and/or staff collectively for any period of time or any set of tasks. Hence we have been left to do our own calculations based on what has been submitted. The approximate number of hours claimed and the hourly rates are as follows:

| Attorney or Staffer | Approx. Hours | Rate |
| --- | --- | --- |
| M. Veronica Mullally, Esq. | 126 | $629.00 |
| Gary Serbin, Esq. | 48.30 | $569.00 |
| Amir Ghavi, Esq. | 131.50 | $416.00 |
| Lani Questembert, Esq. | 53.50 | $442.00 |
| Michael Garber, Esq. | 3.75 | $302.00 |
| Arona Samb | 34 | ? |
| J. Tartanella | 4 | ? |
| R. Lam | .30 | ? |
| T. Nguyen | 3 | ? |
| M. Ferrara | .20 | ? |

In assessing the number of hours claimed, the court must determine how much time was reasonably necessary for the successful accomplishment of the tasks in question. E.g., Briese, 2010 WL 3958737, *1 (citing inter alia Malletier v. Dooney & Bourke, Inc., 2007 WL 1284013, *1 (S.D.N.Y. Apr. 24, 2007)). If the court determines that some of the claimed time was not reasonably

necessary, it should reduce the amount for which compensation is sought, and in doing so it "may 'use a percentage deduction "as a practical means of trimming fat from a fee application."'" Id. (quoting inter alia McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96 (2d Cir. 2006)).

In this case, we conclude that a number of deductions from the time claimed are necessary. First, plaintiffs claim as compensable time approximately 50 hours, almost all attorney time, for preparation and service of papers opposing the dismissal motion of Sergio Ortiz. The basis for that request is presumably our finding that defendants' representations in their motion about Ortiz's purported lack of contacts with New York were "demonstrably false". Briese, 2011 WL 280815 at *3. We observed in our sanctions decision, however, that while such falsity might well trigger sanctions under Rule 11, "the proper forum for such an application would be the district judge, who dealt with the motion." Id. In view of that conclusion and plaintiffs' apparent failure to pursue that request before Judge Swain, we decline to award plaintiffs any compensation on this motion for time spent opposing the dismissal motion.

Apart from that deduction, we note that plaintiffs seek

7

compensation for time spent on both the abortive inspection of defendants' umbrellas on August 12, 2010 and their follow-up inspection in September (six hours spent by Mr. Serbin on September 23, 2010). Since, as we noted in our sanctions decision, plaintiffs made no complaint about the second inspection, see Briese, 2011 WL 280815 at *2, there is no basis for a compensation award for the time invested on that occasion.

More generally, we view the amounts of time claimed by multiple attorneys for basic tasks, including the abortive inspection in August 2010, to be excessive, particularly in the absence of any meaningful explanation for the amount of hours consumed. By way of example, the two most senior litigators on the team claim a total of about 10.70 hours for the first inspection, even though it apparently took very little time since, according to plaintiffs, it became obvious very quickly that defendant Langton had not produced the requested allegedly infringing umbrellas. See Briese, 2011 WL 280815 at *1. Moreover, we note that defendants represent that the inspection took less than one hour (Defs.' Mem. in Opp'n at 8) -- an assertion that plaintiffs do not contradict in reply. Some other categories of tasks took seemingly longer than might have been justified by the final work product, including, for example, the fee application, particularly given the informational

8

deficits that we have noted in that motion and the fact that the legal ground for such an award had been thoroughly plowed last year in plaintiffs' prior fee application.

In other respects we reject most of defendants' attacks on plaintiffs' claims of time spent on discrete tasks. Notably, the need for multiple rounds of sanctions motions was evident from the gradual disclosure of the extent of defendants' discovery misconduct. Hence, although a single set of motions might have been more efficient, the progressive roll-out of the these motions was unavoidable. The depositions of Kenneth Robinson, Kate Zander and Andrew Smith were required in order to demonstrate that defendant Langton had made a sham of the first inspection (Robinson) and to establish that he had lied during his deposition about how he dealt with customers (Zander and Smith). Thus the fees and costs associated with those depositions are fully recoverable.

4. Cost Issues

For the most part we uphold plaintiffs' request for cost compensation. The application for an award of computer charges is reasonable based on the reduction of the full amount by fifty percent to account for computer research on issues unrelated to the

9

sanctions motion. As for a category called "staff overtime", we are unclear as to what and who this covers. Moreover, overtime may be a product of long hours spent on this one case and on the specific tasks triggered by defendants' documented misconduct. On the other hand, overtime may result from the fact that a staff member is assigned to non-compensable tasks (and even tasks for other cases) during regular hours and then put on the compensable project later in the day. Such potential manipulation leaves this category too amorphous and undefined in plaintiffs' papers to justify compensation.

We also decline to award costs for the private investigator whom counsel hired to find defendant Langton in New York when he was allegedly in India. As we observed in the sanctions decision, the evidence does not clearly demonstrate that defendants made a false representation to the court as to Langton's unavailability for a deposition at a time when he was said to be in India, Briese, 2011 WL 280815 at *2-3, and hence we do not view this expense as properly compensable.

All other costs listed by plaintiffs appear to be reasonably related either to the sanctions and fee motions themselves or to steps needed to unearth and then remedy the various forms of

10

discovery misconduct that we identified in our sanctions decision. Accordingly, we will award compensation for them.

### 5. Calculation of Award

Based on the foregoing, we grant plaintiffs' motion for fees and costs in part. The compensable hours of the attorneys will be the following, based on (1) the exclusion of time spent on the Ortiz dismissal motion,[4] (2) the exclusion of time spent on the second umbrella inspection, and (3) a reduction of 20 percent of attorney time to reflect apparent inefficiencies in their labors:

| Attorney | Approx. Hours | Rate | Total |
| --- | --- | --- | --- |
| M. Veronica Mullally, Esq. | 95.20 | $629.00 | $59,880.80 |
| Gary Serbin, Esq. | 24 | $569.00 | $13,656.80 |
| Amir Ghavi, Esq. | 81.50 | $416.00 | $33,904.00 |
| Lani Questembert, Esq. | 41.80 | $442.00 | $18,475.60 |
| Michael Garber, Esq. | 2.40 | $302.00 | $ 724.80 |

---

[4] The claimed time for this set of tasks was approximately 6.8 hours (Mullally), 12.30 hours (Serbin), 29.70 hours (Ghavi), 1.20 hours (Questembert), and .90 hours (Garber). In addition, two staffers billed some time as well -- 1.90 hours for Samb and 1.20 hours for Tartanella.

11

As for the staffers, who appear to include both paralegals and law clerks, because of the small amount of time attributable to all but one of these individuals (Mr. or Ms. Samb), we indulge the assumption that they are all billed as paralegals, and thus award $156.80 per hour for their compensable labors. Because, however, the hours listed reflect less than reasonable efficiency, and in order to compensate for the uncertainty of how all of these individuals actually were billed, we reduce their hours by forty percent after subtracting the time spent on the Ortiz dismissal motion. This yields the following award:

| Staffer | Hours | Rate | Total |
|---|---|---|---|
| Arona Samb | 19.30 | $156.80 | $3,026.24 |
| J. Tartanella | 1.70 | $156.80 | $ 266.56 |
| R. Lam | .20 | $156.80 | $ 31.36 |
| T. Nguyen | 1.80 | $156.80 | $ 282.24 |
| M. Ferrara | .10 | $156.80 | $ 15.68 |

There remains the calculation of costs. Based on the exclusions that we have identified, we reduce the total compensable costs from the demand for $11,679.00 to $8,099.02.

CONCLUSION

For the reasons stated, we award plaintiffs compensation for fees and costs in the following amounts: $126,640.40 in attorney fees, $3,622.08 in staffer fees, and $8,099.02 in costs, or a total of $138,361.68. This sum is imposed jointly and severally on defendants and their attorney, Edward C. Schewe, Esq., and is payable in two weeks.

Dated: New York, New York
       October 5, 2011

_____
MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing Memorandum and Order have been mailed today to:

M. Veronica Mullally, Esq.
Hogan Lovells US LLP
875 Third Avenue
New York, New York 10022

Edward Kelly, Esq.
Tiajoloff & Kelly LLP
Chrysler Building
405 Lexington Avenue
37th Floor
New York, New York 10174

Edward C. Schewe, Esq.
Schewe & Assocs.
1600 Rosencrans Avenue
4th Floor
Manhattan Beach, California 90266