Edward P. Kelly
**TIAJOLOFF & KELLY LLP**
Chrysler Building - 37th Floor
405 Lexington Avenue
New York, New York 10174
Telephone:  (212) 490-3285
Facsimile:  (212) 490-3295


Edward C. Schewe (pro hac vice)
**SCHEWE & ASSOCIATES**
1600 Rosecrans Avenue, 4th Floor
Manhattan Beach, California 90266
Telephone:   (310) 321-7892
Facsimile:   (310) 321-7891


Attorneys for Defendant
Key Lighting, Inc.


# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIESE LICHTTECHNIK VERTRIEBS GmbH, et al. <br><br> Plaintiffs, <br><br> v. <br><br> B2PRO, et al., <br><br> Defendants, <br><br><br> AND RELATED COUNTERCLAIMS | ) <br> ) No. 09 Civ 9790 (LTS) (MHD) <br> ) <br> ) **REDACTED** <br> ) **OPPOSITION TO PLAINTIFFS'** <br> ) **CROSS MOTION FOR SUMMARY JUDGMENT** <br> ) **OF VALIDITY OF U.S. PATENT NO. 5,841,146** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |


**PUBLIC VERSION  CONFIDENTIAL MATERIAL REDACTED**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     THE TIMELINE BASED ON THE EVIDENCE . . . . . . . . . . . . . . . . . . . . . . 2

III.    THE INVENTOR'S UNSUPPORTED CONCLUSION  HE

        DEVELOPED A FIRST PROTOTYPE OF AN UNDISCLOSED

        DEVICE IN THE SUMMER OF 1996 IS CONTRADICTED BY

        PLAINTIFFS' DOCUMENTS AND LACKS CORROBORATION . . . . . . . . 3

IV.    THE APPLICABLE LEGAL STANDARDS. . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.    <u>Claim Construction</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        B.    <u>The Ready for Patenting Condition Under *Invitrogen* and</u>

            <u>*Pfaff* is Met by the Assembled Units in November 1995 and</u>

            <u>by the November 1995 Drawing in</u>

            <u>Plaintiffs' NDCal Rule 3-2(b) Disclosures</u> . . . . . . . . . . . . . . . . . . . . . . 10

III.    THE INVALIDATING PUBLIC USE AT THE NOVEMBER 1995

        VISCOM SHOW IN NEW YORK . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        A.    <u>Claim 1 is Invalid</u>    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        B.    <u>Dependent Claim 2 is Invalid</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        C.    <u>Dependent Claim 3 is Invalid</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        D.    <u>Dependent Claim 4 is Invalid</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        E.    <u>Dependent Claim 5 is Invalid</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        F.    <u>Dependent Claim 6 is Invalid</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        G.    <u>Dependent Claim 7 is Invalid</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

H.    **Dependent Claim 8 is Invalid**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    **14**

I.    **Dependent Claim 9 is Invalid**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    **14**

J.    **Dependent Claim 10 is Invalid**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    **14**

K.    **Dependent Claim 11 is Invalid**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    **15**

L.    **Dependent Claim 12 is Invalid**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    **15**

M.    **Dependent Claim 13 is Invalid**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    **15**

N.    **Dependent Claim 17 is Invalid**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    **16**

O.    **Dependent Claim 18 is Invalid**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    **16**

VI.    **THE INVALIDATING PUBLIC USE IN NEW YORK STARTING IN DECEMBER 1995 PRIOR TO THE CRITICAL DATE** . . . . . . . . . . . . . . . .    **19**

VII.    **BRIESE SOLD AND SHIPPED STILL MORE EQUIPMENT TO MR. BROWN IN FEBRUARY 1996 USED TO ASSEMBLE THE CLAIMED UMBRELLA REFLECTOR** . . . . . . . . . . . . . . . . . . . . . . . . .    **21**

VIII.    **MR. BROWN'S APRIL 1996 OFFER TO SELL AND LATER SALE TO FLASH CLINIC**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    **21**

IX.    **THE ADVERTISEMENT IN THE APRIL 1996 EDITION OF PHOTO DISTRICT NEWS MAGAZINE PUBLICATION**. . . . . . . . . . . . . .    **22**

X.    **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    **24**

## TABLE OF AUTHORITIES

*Bellsouth Telecomms., Inc. v. W. R. Grace & Co.,*

77 F.3d 603, 615 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4


*Berry v. Webb,*

412 F.2d 261 (CCPA 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5


*Bickerstaff v. Vassar College,*

196 F.3d 435 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 21


*Cooper v. Goldfarb,*

154 F. 3d 1321 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5


*Egbert v. Lippmann,*

104 US 333, 26 LEd 755 (1881) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 24


*Hahn v. Wong,*

892 F.2d 1028 (Fed. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5


*Heliflix Ltd. v. Blok-Lok, Ltd.,*

208 F.3d 1339 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24


*In re Hall,*

781 F.2d 897 (Fed. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7


*Interroyal Corp. v. Simmons Co.,*

1979 US Dist LEXIS 14017 (SDNY 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7


*Invitrogen Corp. v. Biocrest Mfg.,*

424 F.3d 1374 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Johnston v. IVAC Corp.*,

885 F.2d 1574 (Fed. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17, 18


*King Pharmaceuticals, Inc. v. EON Labs, Inc.*,

593 F.Supp.2d 501 (SDNY 2009), affirmed, 616 F.3d 1267 (Fed. Cir. 2010) . . . . . . . . . .  7


*Knorr v. Pearson*,

671 F.2d 1368 (CCPA 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5


*Mack v. United States,*

814 F.2d 120 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18


*Netscape Communications Corp. v. Konrad*,

295 F.3d 1315 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6


*Pfaff v. Wells Electronics, Inc.*,

525 US 55, 119 SCt 304, 142 LEd2d 261 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6, 7


*Reese v. Hurst,*

661 F.2d 1222 (CCPA 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5


*Sinskey v. Pharmacia Opthalmics, Inc.*,

982 F.2d 494 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17


*Snyder v. Whittaker Corp.*,

839 F.2d 1085 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7


*Telemac Cellular Corp. v. Topp Telecom, Inc.*,

247 F.3d 1316 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24

## **STATUTES**

35 USC § 102(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   passim

Fed.R. Evid. 902(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7, 8

## **TREATISE AND SECONDARY AUTHORITY**

1 Donald S. Chisum, *Chisum on Patents*, § 3.04[2], p. 3-185 (Matthew Bender) . . . . . . . . . 7

## I.     INTRODUCTION

Defendants oppose Plaintiffs' Cross Motion for Summary Judgment of Validity of U.S. Patent No. 5,841,146 filed February 7, 2012 [doc #215] and respectfully request that the motion be denied in its entirety.

The uncontroverted facts are the claimed umbrella reflector was in public use in the U.S. multiple times and described in a printed publication more than one year before the April 15, 1997 filing date.  All of the asserted claims are invalid under 35 USC § 102(b) based on any one of the multiple statutory bars.

Plaintiffs were required to come forward with admissible evidence and they failed.  The cross-motion papers consist of the same singular declaration by the individual Plaintiff and inventor, Mr. Briese, and unsupported attorney argument.  The Briese declaration is uncorroborated, contradicted by prior deposition testimony and contradicted by Plaintiffs' previously produced documents.  That showing fails as a matter of law.

Plaintiffs' page 1 argument is indicative of the cross-motion's lack of substance. Plaintiffs rely on an article in a magazine The Photographer (Briese declaration Ex. 12) but the magazine does not support Plaintiffs' assertion that Photokina '96 was the "first ever presentation" of Briese's equipment.  That magazine article states: "This year's Photokina witnessed the presentation of the first focusable reflector umbrella."  The article says nothing about whether there were previous demonstrations or use in the U.S. or anywhere.

The Patent Laws of the United States encourage prompt disclosure of new inventions and in particular limit commercial exploitation of an invention prior to filing for a patent application. 35 USC § 102(b) imposes a one year statutory limit on the commercial exploitation of the invention prior to the application filing date.

April 15, 1997 is the U.S. filing date for the application for the patent-in-suit and the critical date for purposes of § 102(b) is April 15, 1996.  Here, the claimed umbrella reflector was in public use multiple times in the U.S. and described in a printed publication all before April 15, 1996 in contravention of the Patent Laws.

A single public use by one person suffices to bar patentability under § 102(b) but Defendants have multiple statutory bars that each independently invalidate the claims.  The invalidating public use began in November 1995 and continued unabated up to and including April 1996.


## II.   THE TIMELINE BASED ON THE EVIDENCE

The factual timeline based on the evidence is as follows:

**March 1995 - December 1, 1995**.   The time frame for the conception, reduction to practice, design and development of the claimed invention based on Plaintiffs' documents produced under NDCal Rule 3-2(b).  See Plaintiffs' documents BH 144-153, Ex. 4 to the 1/19/2012 Schewe Decl. [doc #207].

**November 3-5, 1995.**  The claimed umbrella reflector(s) are displayed at the Viscom show at the Javits Center in New York.  See paragraphs 5-9 of the Declaration of George Brown previously filed [doc #206] (hereafter "Brown Decl.").

**December 1995**.  The claimed umbrella reflector is in public use in New York.  See Brown Decl. ¶ 12.

**January 1996.**  The claimed umbrella reflector is in public use in New York.  Brown Decl. ¶ 12; G. Brown Depo at 173:21 - 177:24, Schewe Decl. Ex. 6 [doc #207].

**February 1996**.   Plaintiffs sell and ship to Mr. Brown a 240 parabola and all the equipment to assemble the unit into an assembled reflector as in the claimed invention.  Brown Decl. ¶ 18 and 1/25/2011 Order of Judge Dolinger at p. 17, 2/16/2012 Schewe Decl. Ex. 13 [doc #226.

**February 1996**.   The claimed umbrella reflector is in public use in New York.  Brown Decl. ¶ 12;  G. Brown Depo at 173:21 - 177:24;  Don Flood Declaration, 1/19/2012 Schewe Decl. Ex. 7 [doc #207].

**March 1996.**  The claimed umbrella reflector is in public use in New York.  *Id.*   The two assembled umbrella reflectors from the November 1995 Viscom show are shown and described in an advertisement in the publication Photo District News prior to the critical date with the wording "System Briese" and "focusing parabolas."  See Brown Decl. ¶¶ 15-17 and Brown Exhibit 6.

**April 1996 prior to April 15, 1996**.   The claimed umbrella reflector is in public use in New York.  Brown Decl. ¶ 12; G. Brown Depo at 173:21 - 177:24, Schewe Decl. Ex. 6 [doc #207].

**April 15, 1997**.   Plaintiff files patent application in the U.S.


## III.    THE INVENTOR'S UNSUPPORTED CONCLUSION HE DEVELOPED A FIRST PROTOTYPE OF AN UNDISCLOSED DEVICE IN THE SUMMER OF 1996 IS CONTRADICTED BY PLAINTIFFS' DOCUMENTS AND LACKS CORROBORATION

The assertion (Pl's memo, p. 4) that Mr. Briese purportedly developed the first prototype of an undisclosed device in "the Summer of 1996" based on a conclusion in paragraph 12 of the Briese declaration should be rejected.

3

No documents were provided to support or corroborate the Summer of 1996 date and no photographs or diagrams were included to illustrate or show what the purported prototype device looks like, whether it is the claimed umbrella reflector in the patent-in-suit and whether it really did exist.  Mr. Briese's unsupported conclusion cannot raise a genuine issue on this summary judgment.  See *Bellsouth Telecomms., Inc. v. W. R. Grace & Co.,* 77 F.3d 603, 615 (2d Cir. 1996) ("It is not sufficient merely to assert a conclusion without supplying supporting arguments or facts.").

If this Summary of 1996 device did exist, the device itself or a photo and supporting documents should be disclosed with Plaintiffs' NDCal Rule 3-2(b) disclosures.  No supporting documentation for the purported device was disclosed by Plaintiffs and still was not disclosed with Mr. Briese's declaration.

Mr. Briese's Summer of 1996 assertion is contradicted by his documents.  Plaintiffs' production of documents required by ND Cal Rule 3-2(b) all bear dates from 1995.  See Plaintiffs' documents BH 144-153, Ex. 4 to the 1/19/2012 Schewe Decl. [doc #207].  These Rule 3-2(b) documents evidence the invention was conceived, developed and reduced to practice beginning in March 1995 to December 1, 1995.  These 1995 documents are Plaintiffs' documents.  Defendants and the Court are entitled to rely on the documents Plaintiffs produced.

The assertion (Pl's memo, p. 12) that the earliest document evidencing conception of the invention is the November 15, 1995 sketch is false.  The evidence is that Plaintiffs' NDCal 3-2(b) disclosures include documents with dates as early as March 28, 1995 (Plaintiffs' documents BH 147 and BH 150 with "28.3.95" indicia) to November 1995 (Plaintiffs' documents BH 153 and BH 146) and document BH 152 (dated August 1995 with a December 1, 1995 revision).  The 1995 documents are consistent with conception of the claimed invention in early 1995, the

4

claimed invention then being assembled and displayed at the November 1995 Viscom show in New York, the sketch dated November 15, 1995 by Mr. Briese after Viscom and the additional public use in New York after Viscom starting in December 1995.

Plaintiffs' argument at the bottom of page 12 of their memo that there are purported "additional drawings" to support Plaintiffs' position is not so. No "additional drawings" are identified, only the Briese declaration exhibit 4 which are Plaintiffs' documents BH 144-152 from their ND Cal 3-2(b) disclosures. All those documents bear 1995 dates as discussed above.

Mr. Briese's assertion that he is the inventor of the claimed invention is not supported by his own documents in the ND Cal 3-2(b) disclosures. The documents BH 144-152 include the name of "Mallek" save for the November 15, 1995 sketch (BH 153). Since these documents evidence conception, reduction to practice, design, and development of the claimed invention, Mr. Mallek's name is reflective of his inventive contribution as an inventor.

Mr. Briese's statement lacks corroboration. An inventor's testimony alone is not sufficient to establish when an inventor made a first prototype. In order to establish an actual reduction to practice (i.e. constructing the claimed invention), an inventor's testimony must be corroborated by independent evidence. *Cooper v. Goldfarb*, 154 F. 3d 1321, 1330 (Fed. Cir. 1998) (citing *Knorr v. Pearson*, 671 F.2d 1368, 1373 (CCPA 1982).

The corroboration requirement can only be satisfied by "independent corroborating evidence in addition to [the inventor's] own statements and documents." *Hahn v. Wong*, 892 F.2d 1028, 1032 (Fed. Cir. 1989); *Reese v. Hurst*, 661 F.2d 1222, 1225 (CCPA 1981) ("evidence of corroboration must not depend solely on the inventor himself"). "The purpose of the rule requiring corroboration is to prevent fraud." *Berry v. Webb*, 412 F.2d 261, 267 (CCPA 1969).

The requirement of independent corroboration of the inventor's testimony should be applied here to Mr. Briese's declaration.  The reason for the rule, to prevent fraud, applies because an inventor like Mr. Briese could choose any date for his alleged invention and alleged prototype to avoid invalidity.  The prevention of fraud is paramount here because the Briese declaration is contradicted by his previously produced documents.

## IV.    THE APPLICABLE LEGAL STANDARDS

Under 35 USC § 102(b), a person shall be entitled to a patent unless the invention was  . . . . described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States.  35 USC § 102(b).

Whether a patent is invalid under 35 USC § 102(b) is a question of law based on underlying questions of fact.  *Invitrogen Corp. v. Biocrest Mfg*., 424 F.3d 1374, 1378-1379 (Fed. Cir. 2005) (citing *Netscape Communications Corp. v. Konrad*, 295 F.3d 1315, 1321 (Fed. Cir. 2005)).

The Federal Circuit explained in *Invitrogen* that the Supreme Court's analysis of the statutory term "invention", or the ready for patenting prong for the on-sale bar in *Pfaff v. Wells Electronics, Inc.*, 525 US 55, 67, 119 SCt 304, 142 LEd2d 261 (1998) applies to the public use bar since both are based on the same policy considerations.  *Invitrogen*, 424 F.3d at 1379 ("The Court noted that both the on sale and public use bars of § 102 stem from the same 'reluctance to allow an inventor to remove existing knowledge from public use.'") (quoting *Pfaff,* 525 U.S. at 64).

The public use bar under § 102(b) arises where, before the critical date, the invention is in public use in the U.S. and ready for patenting.  *Invitrogen*, 424 F.3d at 1379-1380.  "The proper test for the public use prong of the § 102(b) statutory bar is whether the purported public use: (1) was accessible to the public; or (2) was commercially exploited."  *Invitrogen*, 424 F.3d at 1380.

The ready for patenting condition "may be satisfied in at least two ways:  by proof of reduction to practice before the critical date;  or by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention."  *Pfaff*, 525 US at 67-68, 119 S.Ct. 304.

A single public use by one person suffices to bar patentability under § 102(b).  See *Egbert v. Lippmann*, 104 US 333, 336, 26 LEd 755 (1881)("[T]o constitute the public use of an invention, it is not necessary that more than one of the patented articles should be publicly used. The use of a great number may tend to strengthen the proof, but one well defined case of such use is just as effectual to annul the patent as many.").

Display of a working model at a trade show has been held to be a public use bar.  See *Interroyal Corp. v. Simmons Co.*, 1979 US Dist LEXIS 14017, *9-*11 (SDNY 1979).

For purposes of a printed publication under § 102(b), the date of publication generally is that date when the work is first received by any member of the public.  1 Donald S. Chisum, *Chisum on Patents*, § 3.04[2], p. 3-185 (Matthew Bender);  See *In re Hall*, 781 F.2d 897, 900 (Fed. Cir. 1986) (cataloging a paper in a technical library makes the publication sufficiently accessible to those interested in the art to satisfy the requirements of § 102(b)).

Under Fed.R. Evid. 902(6), a newspaper or periodical is self authenticating.  See *Snyder v. Whittaker Corp.*, 839 F.2d 1085, 1089 (5th Cir. 1988) (for magazine article, "Fed.R.Evid.

7

902(6) dispenses with 'extrinsic evidence of authenticity' for printed articles from periodicals.");

*King Pharmaceuticals, Inc. v. EON Labs, Inc.*, 593 F.Supp.2d 501, 506 (SDNY 2009) ("The basis for King's denials is unclear, given that '[p]rinted materials purporting to be newspapers or periodicals' are self-authenticating under Fed. R. Evid. 902(6)."), affirmed, 616 F.3d 1267 (Fed. Cir. 2010).

### A.   Claim Construction

The claim construction part of the analysis is complete.  The Court issued its claim construction on October 25, 2011 [doc #201].  Schewe Decl. Ex. 2 [doc #207].  The Court construed four disputed terms and adopted the parties' agreed upon constructions for other terms. Claim 1 the lone independent claim issued with numerous limitations that describe an assembled apparatus and recites:

1.  An umbrella reflector comprising:

a bearing body (5) into which a tubular carrying means (1) is inserted so that said tubular carrying means is displaceably held within said bearing body (5);

a ring of articulated joints (10) arranged on said bearing body (5) and to which umbrella stretchers (11) are hingedly attached, a reflecting umbrella covering (18) fastened to umbrella stretchers (11);

a sliding means (15) being displaceable on said tubular carrying means (1)

a ring of toggle joints (14) arranged on said sliding means to which expanding stretchers (13) are mounted, the end of expanding stretchers (13) being secured to umbrella stretchers (11) by articulated expanding joints (12), said expanding stretchers (13) being dimensioned so that when opening the reflectors, said sliding means (15) is displaceable to a point past the plane of

said articulated expanding joints (12), where the resilient restoring forces provide an arrestment holding the reflector in an open position,  and

an element (2) emitting electromagnetic or acoustic waves which is arranged at the end of said tubular carrying means (1) facing the interior of said umbrella reflector so that by displacing said tubular carrying means (1) within said bearing body (5) said element (2) is moved into different positions in relation to the opened reflector.

Figure 1 from the patent is as follows:



The terms of the independent claim 1 construed by the Court or agreed to by the parties:

bearing body:  structure into which the tubular carrying means is inserted so as to be displaceably held within, and bearing the ring of articulated joints to which the umbrella stretchers are attached, and located at the point at which the umbrella stretchers converge.

9

tubular carrying means:  tube structure that is displaceable along the axis established by the bearing body.

sliding means: Annular structure (and its equivalents) for being displaceable on the tubular carrying means.

expanding stretchers limitation:  Expanding stretchers having a construction so that when opening the reflector the sliding means (15) is displaceable to a point past the plane of the articulated expanding joints (12), where the resilient restoring forces hold the reflector in the open position as shown in Fig. 1.

element arranged at the end of the tubular carrying means limitation: Source emitting light or sound, such as a lamp head with at least one lamp and attached at the end of the tubular carrying means facing the interior of the umbrella reflector, so that by displacing the tubular carrying means within the bearing body the source is moved into different positions in relation to the opened reflector.


**B.     The Ready for Patenting Condition under _Invitrogen_ and _Pfaff_ is Met by the Assembled Units in November 1995 and by the  November 1995 Drawing in Plaintiffs' NDCal Rule 3-2(b) Disclosures**

The ready for patenting condition is satisfied for at least two independently sufficient reasons: reduction to practice and a drawing of the claimed invention initialed by the named inventor Mr. Briese, both prior to the critical date.

First, the claimed invention was assembled and in public use at the November 1995 Viscom trade show in New York.  See Brown Decl. ¶¶ 5-9.  The facts in the Brown Declaration satisfy the ready for patenting condition.

10

Second, the sketch in Plaintiffs' NDCal Rule 3-2(b) disclosures satisfies the ready for patenting condition. Plaintiffs' disclosures include Bates numbered document BH153, a drawing of the alleged invention that bears indicia "15.11.95" (i.e. November 15, 1995). See 1/19/2012 Schewe Decl. Exs. 3 and 4 [doc #207]. Document BH153 was produced as part of Plaintiffs' NDCal Rule 3-2(b) disclosures and is dated November 15, 1995. See HW Briese Depo at 233:9-234:2, Schewe Decl. Ex. 12 (filed as confidential).

The same drawing in document BH153 appears in the file history for the patent-in-suit as Plaintiffs' document Bates BH106. See Schewe Decl. Ex. 5 [doc #207]. Document BH 106 eventually ended up as Fig. 1 in the patent and was produced as part of Plaintiffs' production of documents BH61-BH143 identified as corresponding to Plaintiffs' ND Cal Rule 3-2(c) production ("A copy of the file history for each patent-in-suit."). See Schewe Decl. Ex. 3 [doc #207]. Thus, the ready for patenting condition is independently satisfied by Plaintiffs' document BH153.

## V.    THE INVALIDATING PUBLIC USE AT THE NOVEMBER 1995 VISCOM SHOW IN NEW YORK

Claims 1-13 and 17-18 are invalid under 35 USC § 102(b). The claimed umbrella reflector was publicly displayed in November 1995 in New York more than one year prior to the April 15, 1997 U.S. filing date.

### A.    Claim 1 is Invalid

The claim 1 umbrella reflector was displayed and in public use at the Viscom show at the Javits Center in New York the first weekend in November 1995. See Brown Decl. ¶¶ 5-6. Exhibited at this show were an assembled 180 size umbrella reflector (Brown Decl. ¶¶ 7-8 and

Brown Exs. 1.1-1.5) and an assembled 240 size umbrella reflector.  Brown Decl. ¶ 9 and Brown

Exs. 2.1-2.4.  As Mr. Brown explains, the exhibited umbrella reflectors were assembled as in the

claims comparing the numbers in the claims to the exhibited umbrella reflectors.

**B.    Dependent Claim 2 is Invalid**

Claim 2 recites: The reflector according to claim 1, wherein in the open position, said

sliding means (15) is supported on said bearing body (5).  The claim is construed as the sliding

means (15) abuts or engages the bearing body (5).

The claim 2 umbrella reflector with the sliding means abutting the bearing body was in

public use at the November 1995 Viscom show in New York.  See Brown Decl. ¶¶ 7-8 and

Brown Exhibits 1.1-1.5 and Brown Decl. ¶ 9 and Brown Exhibits 2.1-2.4.

**C.    Dependent Claim 3 is Invalid**

Claim 3 recites:  The reflector according to claim 1, wherein in the open position, said

sliding means (15) is secured by an arrestment.  The term arrestment is construed as a

mechanism to stop or check motion.

The claim 3 umbrella reflector with the sliding means stopped and the reflector in the

open position was in public use at the November 1995 Viscom show in New York.  See Brown

Decl. ¶¶ 7-9 and Brown Exhibits 1 and 2.

**D.    Dependent Claim 4 is Invalid**

Claim 4 recites:  The reflector according to claim 1, wherein said emitting element (2) is

detachably fastened to said carrying means (1).  This is construed as the emitting element is

removeably attached to the carrying means (1).

12

The claim 4 umbrella reflector with the removeably attached lamp (2) was in public use at the November 1995 Viscom show in New York.  See Brown Decl. ¶¶ 7-9 and Brown Exhs. 1 and 2.

### E.   Dependent Claim 5 is Invalid

Claim 5 recites:  The reflector according to claim 1, wherein at the end opposite to said emitting element said carrying means (1) carries a means (3) for the coupling and uncoupling of energy which is connected to said emitting element (2) by means of said carrying means (1).

This is construed as an electric power supply coupled to the emitting element (2) via the carrying means (1) for coupling and uncoupling of energy.

Brown Exhibits 1.1 and 2.1 both show the electrical cord and the electric power supply (3) to supply electricity to the lamp (2).  The claim 5 umbrella reflector was in public use at the November 1995 Viscom show in New York.  See Brown Decl. ¶¶ 7-9 and Brown Exhs. 1 and 2.

### F.   Dependent Claim 6 is Invalid

Claim 6 recites:  The reflector according to claim 1, wherein said bearing body (5) carries guides and brake elements (6) inside.  This is construed as the bearing body has, inside of the bearing body, elements that regulate or direct and slow or stop the motion or operation of objects held within the bearing body.

The claim 6 umbrella reflector with the guides and brake elements (6) with the stopped motion of the tube structure (1) held within the bearing body (5) was in public use at the November 1995 Viscom show in New York.  See Brown Decl. ¶¶ 7-9 and Brown Exhs 1 and 2.

### G.   Dependent Claim 7 is Invalid

Claim 7 recites:  The reflector according to claim 1, wherein said bearing body (5) is rotatably connected to a supporting means (8) by means of a clamp (7).  This is construed as

bearing body (5) is rotatably connected to a support structure by a clamp.

The claim 7 umbrella reflector with the clamp (7) was in public use at the November 1995 Viscom show in New York.  See Brown Decl. ¶¶ 7-9 and Brown Exhibits 1 and 2.

### H.   Dependent Claim 8 is Invalid

Claim 8 recites:  The reflector according claim 1, wherein said bearing body (5) is secured to a stand (9).  There was no dispute over the construction of this claim.

The claim 8 umbrella reflector with the structure (bearing body (5)) secured to the stand (9) was in public use at the November 1995 Viscom show in New York.  See Brown Decl. ¶¶ 7-9 and Brown Exhibits 1 and 2.

### I.   Dependent Claim 9 is Invalid

Claim 9 recites:  The reflector according claim 1, wherein the distance (a) between said articulated expanding joints (12) and said articulated joints (10) on said bearing body (5) is smaller than the distance (b) between said expanding stretchers (12) and the ends of said umbrella stretchers (11).

This is construed as in the position of the reflector as shown in Fig. 1, the distance (a) is smaller than the distance (b).

The claim 9 umbrella reflector positioned as shown in Fig. 1 of the patent with the claimed distance (a) smaller than the distance (b) was in public use at the November 1995 Viscom show in New York.  See Brown Decl. ¶¶ 7-9 and Brown Exhs. 1 and 2.

### J.   Dependent Claim 10 is Invalid

Claim 10 recites: The reflector according to claim 1, wherein in the open position, said sliding means (15) is only slightly moved beyond the toggle joint dead center of said expanding stretchers (13).

This is constued as in the position of the reflector as shown in Fig. 1, the sliding means (15) is only slightly moved beyond the toggle joint dead center of the expanding stretchers (13).

The claim 10 umbrella reflector positioned as shown in Fig. 1 of the patent with the sliding means slightly moved beyond the toggle joint dead center as in Fig. 1 was in public use at the November 1995 Viscom show in New York.  See Brown Decl. ¶¶ 7-9 and Brown Exhs. 1 and 2.

**K.    Dependent Claim 11 is Invalid**

Claim 11 recites: The reflector according to claim 1, wherein said umbrella covering (18) includes hems (19) into which said umbrella stretchers (11) are inserted.

The term hems is construed as portion of the umbrella covering (18) enclosing umbrella stretchers (11).

The claim 11 umbrella reflector with the hems (19) was in public use at the November 1995 Viscom show in New York.  See Brown Decl. ¶¶ 7-9 and Brown Exhs. 1 and 2.

**L.    Dependent Claim 12 is Invalid**

Claim 12 recites:  The reflector according to claim 1, wherein said umbrella covering (18) is secured to the ends of said umbrella stretchers (11) by means of sleeves (21).

The term sleeves is construed as end structure for fastening the umbrella covering (18) to the umbrella stretchers (11).

The claim 12 umbrella reflector with the sleeves (21) was in public use at the November 1995 Viscom show in New York.  See Brown Decl. ¶¶ 7-9 and Brown Exhs. 1 and 2.

**M.    Dependent Claim 13 is Invalid**

Claim 13 recites:  The reflector according to claim 1, wherein said umbrella covering (18) is a metallized foil.

15

The term metallized foil is construed as flexible reflective material such as fabric woven of metal yarns.

The claim 13 umbrella reflector with the reflective metalized foil umbrella covering (18) was in public use at the November 1995 Viscom show in New York.  See Brown Decl. ¶¶ 7-9 and Brown Exhs. 1 and 2.

### N.   Dependent Claim 17 is Invalid

Claim 17 recites: The reflector according to claim 1, wherein at least twenty umbrella stretchers (11) are provided.  There was no dispute over the construction of this claim.

The claim 17 umbrella reflector with the claimed number of umbrella stretchers (11) was in public use at the November 1995 Viscom show in New York.  See Brown Decl. ¶¶ 7-9 and Brown Exhs. 1 and 2.

### O.   Dependent Claim 18 is Invalid

Claim 18 recites:  The reflector according to claim 1, wherein said stretchers (11, 13) consist of glass-fiber reinforced plastic, carbon-fiber reinforced plastic or steel.  There was no dispute over the construction of this claim.

The claim 18 umbrella reflector with claimed glass-fiber and carbon-fiber plastic stretchers (11, 13) was in public use at the November 1995 Viscom show in New York.  See Brown Decl. ¶¶ 7-9 and Brown Exhs. 1 and 2.

Thus, claims 1-13 and 17-18 are invalid under 35 USC § 102(b).  Plaintiffs' memo fails to dispute these facts with evidence.  Plaintiffs' argument (Pl's memo, p. 10) that Mr. Brown failed to provide a chain of custody for the equipment described in his declaration fails.  Mr. Brown's declaration does explain the relevant chain of custody.  Brown Decl. ¶¶ 5-6.  All counsel

16

questioned Mr. Brown at his deposition and all counsel received responsive documents and components from Mr. Brown.

Plaintiffs' memo misstates the facts surrounding production of documents and equipment. Defendants timely produced their NDCal Invalidity Contentions in June 2010 and Plaintiffs photographed the umbrellas that Defendants had in their possession. Mr. Brown, a third party, was deposed on September 30, 2010. Mr. Brown produced his documents and his components that were subpoenaed by Plaintiffs to all counsel. See Exhibit F to the Munoz Decl. [doc #214]. Plaintiffs come up with nothing but unsupported attorney argument to falsely attack Mr. Brown's declaration. Attorney's argument is not a substitute for evidence. *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1581 (Fed. Cir. 1989).

Mr. Briese's new claim (Pl's memo, pp. 11-12 and Briese Decl. ¶ 8) that he does have documents showing the equipment he brought with him to the 1995 Viscom show in New York

> **REDACTED**

"It is beyond cavil that a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that . . . contradicts the affiant's previous deposition testimony." *Bickerstaff v. Vassar College*, 196 F.3d 435, 455 (2d Cir. 1999); *Mack v. United States,* 814 F.2d 120, 124 (2d Cir. 1987) (contradictory declaration should be disregarded on summary judgment); *Sinskey v. Pharmacia Opthalmics, Inc.*, 982 F.2d 494, 498 (Fed. Cir. 1992) (affirming summary judgment under 35 USC § 102(b) and exclusion of inventor's inconsistent declaration). Mr. Briese's new statement should be disregarded on summary judgment.

Mr. Brown's factual showing of invalidating public use of the claimed invention is not rebutted by evidence. Plaintiffs' assertion in footnote 5 on page 13 of Plaintiffs' memo that

Briese had a purported "general policy of not retaining documents for more than ten years" is belied by the fact that Plaintiffs' Rule 3-2(b) produced documents all bear 1995 dates. These 1995 dated documents are not an "obsolete" design as suggested by the footnote, they are Plaintiffs' disclosures showing conception, development, design and reduction to practice of the claimed invention in 1995.

Plaintiffs' argument (Pl's memo, p. 13) that a September 1996 press release somehow supports Plaintiffs' position that the term "Focus" or "focusable umbrella reflectors" were used "for the first time" in September 1996 is incorrect. That September 1996 press release (Briese Exhibit 10) says nothing about the first use of "Focus" or "focusable" with Briese equipment. Mr. Brown's PDN Ad (Brown Exh. 6) included terms "System Briese" and "focusing parabolas" and predates any September 1996 press release.

Plaintiffs' citation to two publications (Pl's memo, pp. 13-14) that allegedly support Plaintiffs' position is the same misquote on page 1 of their memo for the article in The Photographer. The Shutterbug article, also from late 1996, is not even discussed in Plaintiffs' memo. None of the Briese exhibits 10, 11 or 12 counters the evidence that the claims are invalid.

Plaintiffs' arguments (Pl's memo, p. 14 - 15:4) about a November 1996 price list from Mr. Brown and price increases fails to counter the evidence of invalidity by the public use activity in New York in November 1995 through April 14, 1996 in Mr. Brown's declaration. Plaintiffs' unsupported attorney argument is not a substitute for evidence. *Johnston*, 885 F.2d at 1581.

Plaintiffs' plea that the two assembled umbrella reflectors described in Mr. Brown's declaration allegedly were not the devices Mr. Briese brought to the November 1995 Viscom

18

Show (Pl's memo, p. 15, line 5 - p. 16, line 5) is attorney argument and based on the undisclosed Briese Summer of 1996 device that is uncorroborated.  Neither counters the evidence that the claims are invalid as shown by Mr. Brown's declaration.  Plaintiffs' cross motion must be denied.

## VI.    THE INVALIDATING PUBLIC USES IN NEW YORK STARTING IN DECEMBER 1995 PRIOR TO THE CRITICAL DATE

Claims 1-13 and 17-18 are invalid under 35 USC § 102(b) for additional independent reasons:  The claimed umbrella reflector was in public use in New York at least twenty-four times prior to the critical date.  See Brown Decl. ¶¶ 10-11.  Mr. Brown rented the equipment and fully assembled the reflectors at that time.  Brown Decl. ¶ 10.

Each of the following lists separate independent grounds to invalidate the claims:

i.    The umbrella reflector in claims 1-13 and 17-18 was in public use in December 1995 at Pier 59 Studios in New York more than one year prior to the April 15, 1997 U.S. filing date.  See Brown Decl. ¶ 12 and Brown Exhibit 3.

ii.    The umbrella reflector in claims 1-13 and 17-18 was in public use in New York on multiple dates repeatedly from January 1996 to April 14, 1996.  See Brown Decl. ¶ 12 and Brown Exhibit 3.  As shown in Brown Exhibit 3 (marked as Ex. 27 at the Brown deposition), the public use occurred April 11, 1996, April 12, 1996, February 9, 1996, February 23, 1996, March 22, 1996, April 2, 1996, April 3, 1996, April 4, 1996, April 8, 1996, between March 6, 1996 and March 14, 1996, over four days between February 20 and February 28, 1996, over four days between February 5 and February 12, 1996 and over five days between January 18th and January 31, 1996.  See G. Brown Depo at 173:21 - 177:24, Schewe Decl. Ex. 6 [doc #207].

The public use in New York includes use by George Brown and Mark Abrahams (See Brown Decl. ¶ 13 and Brown Exhibit 4, from Depo exh. 30) and by George Brown and Don Flood.  See Brown Decl. ¶ 14, Brown Exhibit 5; Don Flood Declaration, Schewe Decl. Ex. 7.

Plaintiffs' arguments (Pl's memo, pp. 16-17) that Mr. Brown's rental logs in Brown Exhibit 3 allegedly support Plaintiffs' position are incorrect.  The Opposition ignores Mr. Brown's declaration that does identify the rented equipment (Brown Decl. ¶ 12) and does not address Mr. Brown's deposition testimony that the Parabola 240 rentals reflected in the logs were for the focusing parabolas.  See Brown Depo at 173:21-177:24, Schewe Decl. Ex. 6 [doc #207].

The rental logs support Mr. Brown's declaration.  The Brown rental logs reflect a unit price of $200 for the Parabola 240 rental (Brown Exh. 3, pp. 2-8) and $250 for the Parabola 240 rental in December 1995 (Brown Exh. 1, p. 1) and a different, lower price of $57.50 for something different, like the Para100 rental.  Brown Exh. 3, p. 7.  This different pricing supports the fact the Parabola 240 was new and was different compared to the Para100.

Plaintiffs' challenge to Mr. Brown's rental invoices to Mr. Abrahams (Pl's memo, pp. 17-19) and Don Flood (Pl's memo, pp. 19-21) is illusory.  The Abrahams invoice reflects a February 7, 1996 "shoot" date.  The Flood invoice shows a February 5, 1996 shoot date.  Both dates are three months <u>after</u> the November 1995 Viscom when the equipment was given to Mr. Brown by Mr. Briese.  See Brown Decl. ¶ 10.  Both invoices show a higher unit price was charged, not the lower price of $57.50 for different equipment like the Para100.  This different pricing also supports the fact the Parabola 240 was new and different compared to other equipment.

20

## VII.   BRIESE SOLD AND SHIPPED STILL MORE EQUIPMENT TO MR. BROWN IN FEBRUARY 1996 USED TO ASSEMBLE THE CLAIMED UMBRELLA REFLECTOR

Plaintiffs' assertion (Pl's memo, pp. 22 - 23) that the February 2, 1996 Briese equipment invoice to Mr. Brown could not have been the equipment explained in Mr. Brown's declaration is without merit.  Plaintiff's arguments about what purportedly is reflected in the February 2, 1996 Briese invoice relies only on the Briese declaration.  The Briese declaration contradicts

**REDACTED**

In February 1996, the Plaintiff company Briese GmbH sold and shipped to Mr. Brown a 2.4 meter parabola and the components and parts to assemble the unit into an assembled operational reflector.  Brown Decl. ¶ 18 and Exhibit 7.  The equipment sold and shipped to Mr. Brown included a reflector, focus tube and all of the components and parts to assemble the 240 parabola reflector with the elements (1-8, 10-21) as shown in Brown Exhibit 2.1-2.4.  Brown Decl. ¶ 18.  Plaintiffs' motion must be denied based on Mr. Brown's declaration for this reason also.

## VIII.   MR. BROWN'S APRIL 1996 OFFER TO SELL AND LATER SALE TO FLASH CLINIC

Plaintiffs' alleged dispute with Mr. Brown's equipment offer and later sale to Flash Clinic (Pl's memo, pp. 23-24) fails also.  The opposition relies only on Mr. Briese's declaration statement about his purported and undisclosed Summer of 1996 device that is uncorroborated and contradicted by his documents.  The Briese declaration says nothing at all about Mr. Brown's

21

offer and sale to Flash Clinic.  Neither Plaintiffs' attorney argument nor the Briese declaration is competent evidence.

The evidence shows that on April 12, 1996, Mr. Brown faxed an offer to Flash Clinic to sell a 2.4 meter parabola reflector and the associated components and parts.  Brown Decl. ¶ 19 and Brown Exhibit 8.  After the critical date, on April 17, 1996, Flash Clinic then purchased the 2.4 meter parabola reflector and the equipment that Mr. Brown had offered as evidenced by the Flash Clinic Purchase Order.  *Id.*  The equipment offered and then eventually sold to Flash Clinic included the reflector, focus tube and flash tube to assemble the 2.4 meter parabola reflector with the elements (1-8, 10-21) as shown in Brown Exhibit 2.1-2.4.  *Id.*  Plaintiffs' motion must be denied based on Mr. Brown's declaration for this reason also.


## IX.    THE ADVERTISEMENT IN THE APRIL 1996 EDITION OF PHOTO DISTRICT NEWS MAGAZINE PUBLICATION

Plaintiffs dispute over the content and publication of the PDN Ad fails for lack of proof.  Claims 1-13 and 17-18 are invalid under 35 USC § 102(b) for an additional independent reason: The claimed umbrella reflector was described in an advertisement in a printed publication Photo District News prior to the critical date.  See Brown Decl. ¶¶ 15-17 and Brown Exhibit 6.

The subject Ad includes Mr. Brown's photograph taken by Mr. Brown in March 1996 of the assembled 180 and 240 umbrella reflectors that were left with Mr. Brown after the November 1995 Viscom Show.  See Brown Decl. ¶ 16 and Brown Exhibit 6.  The photograph in the Ad show the assembled parabolic reflectors.  All elements of claims 1-13 and 17-18 were used in the ad photo for both the 180 size apparatus (Brown Decl. ¶ 16) and for the 240 size apparatus.  *Id.*

22

Plaintiffs' memo and Mr. Briese's declaration do not dispute:

(i) the "Mar 1996" date indicia on the Cheshire label on the front cover of the April 1996 edition of PDN magazine;

(ii) the Ad expressly calls out "System Briese" and "focusing parabolas";

(iii) the Ad photograph shows assembled parabola reflectors with stretchers, a tube structure inserted into a body, a lighted lamp at the end of the tube structure, all held in place in an open position and assembled onto a stand. See Brown Ex. 6.

Plaintiffs' attorneys argue what they purport to see in the Ad, but that argument is unavailing. The relevant inquiry is what the Ad discloses to a person of ordinary skill in combination with his own knowledge. See *Heliflix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1347 (Fed. Cir. 2000). The inquiry is what the Ad inherently discloses to a skilled person. See *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1327 (Fed. Cir. 2001).

Mr. Brown's declaration ¶ 16 describes what was used in the photo in the Ad and what is disclosed. Mr. Brown's first-hand knowledge is not rebutted by any competent evidence.

Plaintiffs' charge Mr. Brown lacks personal knowledge about "dissemination" of the PDN magazine is incorrect. Mr. Brown does have personal knowledge. It is Mr. Brown's understanding that this April 1996 edition of Photo District News containing the subject Ad was published and distributed in March 1996. Brown Decl. ¶ 17. He advertised several times in PDN in the 1990's and is familiar with their ad reservation, insertion, production and distribution dates and deadlines. Brown Decl. ¶ 17. Mr. Brown's statement the PDN magazine with his Ad was published, distributed and most issues received by domestic subscribers prior to the April 1996 cover date is not rebutted by Plaintiffs.

The March 1996 publication date for the magazine is supported by additional facts.  The Brown Exhibit 6 bears date indicia at the top:  "04/96" and "3/11/96".  The same "04/96" and "3/11/96" indicia appear on deposition exhibit 94 from the June 2008 California deposition of Mr. George Brown.  See 1/19/2012 Schewe Decl. Ex. 8 [doc #207].

The cover of the April 1996 edition of Photo District News magazine as obtained from the New York Science Industry and Business Library shows indicia with "Mar 96" on the front Cheshire label.  See Schewe Decl. Ex. 9 and Ex. 10 [doc #207].  Similar "04/96" and "3/11/96" indicia appear on Plaintiffs' documents Bates numbered BHWB 7 and BHWB 37 produced by Plaintiffs as part of Plaintiffs' production of documents in response to paragraph 12 of the District Court's February 11, 2010 Scheduling Order.  See Schewe Decl. Ex. 11 [doc #207].

Mr. Briese's declaration is silent about the elements of the assembled reflectors disclosed by the PDN Ad.  Mr. Brown's first-hand knowledge is not rebutted by any competent evidence.

**REDACTED**

declaration and deposition do not establish the claims are valid as a matter of law.


X.      **CONCLUSION**

A single public use by one person suffices to bar patentability under § 102(b) but Defendants have shown with evidence there were multiple numerous statutory bars that each independently invalidates the claims.  The Supreme Court in *Egbert v. Lippmann* said it best, one public use is sufficient but the use of a great number may tend to strengthen the proof.  Plaintiffs' Cross Motion must be denied for all these reasons.  Plaintiffs' Cross Motion is based on the

inventor's declaration contradicted by his documents, contradicted by his deposition testimony, uncorroborated and is completely deficient.  Plaintiffs' motion cannot establish the asserted claims are valid as a matter of law.

Respectfully submitted,

Dated: February 24, 2012          By: _____

Edward C. Schewe (pro hac vice)
**SCHEWE & ASSOCIATES**
1600 Rosecrans Avenue, 4th Floor
Manhattan Beach, California  90266
Tel/Fax:  (310) 321-7892/ (310) 321-7892

Edward P. Kelly
**TIAJOLOFF & KELLY LLP**
Chrysler Building - 37th Floor
405 Lexington Avenue
New York, New York 10174
Tel/Fax:  (212) 490-3285/ (212) 490-3295

Attorneys for Defendant
Key Lighting, Inc.

25