UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
BRIESE LICHTTECHNIK VERTRIEBS
GmbH and HANS-WERNER BRIESE,   :

              Plaintiffs,   :   REPORT & RECOMMENDATION
                        and
       -against-   :   MEMORANDUM & ORDER

BRENT LANGTON, B2PRO, KEY   :   09 Civ. 9790 (LTS)(MHD)
LIGHTING, INC. and SERGIO
ORTIZ,   :

           Defendants.   :
------------------------------x

TO THE HONORABLE LAURA TAYLOR SWAIN, U.S.D.J.:

    Plaintiffs Briese Lichttechnik Vertriebs and Hans-Werner Briese have once again moved for sanctions against the defendants for discovery derelictions.[1] They specifically complain that three days after the close of discovery at the end of October 2010, defendant Key Lighting, Inc. underwent a change of management by substituting a hitherto unknown individual named Susan Miller as President, Secretary, Treasurer and Director, in place of defendant

---

    [1] We have imposed sanctions on defendants on three prior occasions for an impressive array of pretrial misconduct both by them and, in some instances, by their attorney. (See July 22, 2010 Tr. 30-32); Briese Lichttechnik Vertriebs GmbH v. Langton, 2010 WL 3958737, *1 (S.D.N.Y. Oct. 4, 2010); Briese Lichttechnik Vertriebs GmbH v. Langton, 2011 WL 280815, *9-12 (S.D.N.Y. Jan. 10, 2011); see also Briese Lichttechnik Vertriebs GmbH v. Langton, 2011 WL 4756252, *1(S.D.N.Y. Oct. 7, 2011); Briese Lichttechnik Vertriebs GMBH v. Langton, 2011 WL 4756967, *1-4 (S.D.N.Y. Oct. 7, 2011).

Sergio Ortiz, and that defendants failed to provide this information to plaintiffs in supplementation of their prior disclosures. More broadly, plaintiffs complain that throughout the discovery period defendants have withheld documents -- including, particularly, corporate-structure documents of Key Lighting and its apparent twin, co-defendant B2Pro -- that they have lied at deposition and in court papers about who was in charge of these entities, and that plaintiffs have been deprived of honest information to document their understanding that co-defendant Brent Langton has actually run these entities. (See Pls.' Mem. of Law in Supp. of Mot. for Sanctions at 1-2, 7-9; Pls.' Reply Mem. of Law in Supp. of Mot. for Sanctions at 8). For relief they seek a ruling that if B2Pro is found liable to them for "infringement"[2], the court should deem Ortiz and Langton personally liable as well for any such infringement. (See Pls.' Mem. of Law at 1, 10-11; Pls.' Reply Mem. of Law at 8).

In defendants' response they proffer a declaration under penalty of perjury by an individual named Kimberly Smith, who is apparently affiliated with an entity known as Nevada State Corporate Network ("NSCN"). (Schewe Decl. Ex. 1 (Smith Letter)).

---

[2] Plaintiffs assert claims for both patent and trade-dress infringement. (See Second Am. Compl. ¶¶ 27-42).

Ms. Smith, who does not disclose her specific affiliation with this entity but signs her statement on the corporate letterhead, represents that Ms. Miller is the chief executive officer of NSCN and was appearing on the documentation for Key Lighting as a "nominee" officer, a status assertedly permitted under Nevada law, to hide the identity of the real corporate officers.[3] She states that Ms. Miller was nominally appointed to these positions for this limited purpose but resigned the same day, and that Sergio Ortiz remained at all pertinent times the President, Secretary, Treasurer and Director of Key Lighting, as was reflected in prior Nevada corporate filings. (Id.; see Muñoz Decl. Ex. 1). She explains that the appearance of Ortiz in those prior filings was attributable to a lapse in payment by Key Lighting to NSCN in 2009 and 2010, with payment resumed on November 3, 2010, thus leading to the posting of Ms. Miller's name thereafter as the sole officer. (See Smith Letter). She also states that on July 13, 2011 NSCN was paid -- presumably by Key Lighting -- for this service and that Ms. Miller's name was again posted as the sole officer, but that Ortiz remained in those positions in fact. (Id.).

---

[3] Ms. Smith suggests that this nominee service is a substantial business, asserting that NSCN does this for 50,000 entities. (Smith Letter).

Apart from this explanation, defendants spend much time briefing the seemingly irrelevant question of whether plaintiffs state a claim in their most recent complaint for alter-ego liability on the part of Messrs. Ortiz and Langton. (Defs.' Mem. of Law in Opp'n to Mot. for Sanctions at 6-9). They argue that no such claim has been pled, and that the complaint should not be amended at this late date. (Id. at 3-6). Since plaintiffs have not moved for leave to amend, we do not address this aspect of defendants' papers.

In plaintiffs' reply, they in turn argue at some length about the pattern of discovery misconduct and misstatements by defendants concerning the status of the two corporate entities and the roles of Ortiz and Langton within these companies. (Pls.' Reply Mem. of Law at 1-2, 5-7). They also assert, in largely conclusory fashion, that the declaration by Ms. Smith is perjurious or else simply lacks credibility, and they reiterate their demand for imposition of liability on the individual defendants if B2Pro (now referred to by them as Key Lighting d/b/a B2Pro) is found to have "infringed", presumably either the patent or the trade dress of plaintiffs. (Id. at 2-5, 7-8).

4

## ANALYSIS

As noted, we have found in the past that defendants have engaged in serial misconduct in the course of discovery, including not only failure to provide required information, but also blatantly false testimony about their control of the defendant companies and about their own participation in assertedly infringing activities. In accordance with those findings, we have imposed certain sanctions on them, principally in the form of compelled findings and instructions to the jury concerning their discovery misconduct and the inferences that may be drawn from that misconduct. See, e.g., Briese, 2011 WL 280815, at *11-12. In the current instance, however, we are unable to find that defendants have been guilty of deliberate misfeasance, or that plaintiffs have been so prejudiced that the proposed sanction sought by plaintiffs is justified.

The proffer by defendants indicates that the listing of Ms. Miller as the sole officer of Key Lighting was a formulaic accommodation to defendants' interest in privacy. (See Smith Letter). Moreover, we have no evidence to suggest that the representation by Ms. Smith as to this fact is not credible. A visit to the web site of NSCN reveals that it is a Nevada-based

5

company that provides basic support services for corporations and those interested in incorporating their businesses, and indeed has apparently been evaluated by, among others, the Better Business Bureau. <u>See</u> Nevada State Corporate Network, http://www.nscn.com (last visited July 25, 2012); BBB Business Review, Nevada State Corporate Network, Inc., http://www.bbb.org/southern-nevada/ business-reviews/incorporating-companies/nevada-state-corporate -network-in-las-vegas-nv-60025 (last visited July 25, 2012); Inc.com, Nevada State Corporate Network, http://www.inc.com /inc5000/profile/nevada-state-corporate-network (last visited July 25, 2012). It appears as well that Ms. Miller (a.k.a. Susan Miller Zapper) is indeed the CEO and that Ms. Smith is employed there as well. <u>See</u> Nevada State Corporate Network, Staff, http://www.nscn.com/staff/ (last visited July 25, 2012); Cambridge Who's Who, Susan Miller, Nevada State Corporate Network, Inc., http://www.cambridgewhoswho.com/Members/NV/SusanMiller-Zapper-180 986.html (last visited July 25, 2012); Businessweek.com, Company Overview of Nevada State Corporate Network, Inc., http://investing. businessweek.com/research/stocks/private/snapshot.asp?privcapId=5 9518400 (last visited July 25, 2012). Moreover, there is additional evidence in available caselaw that the use of nominee officers to conceal the identity of the actual corporate principals has been a feature of the Nevada and other state corporate landscapes for some

time. See, e.g., United States v. Cohen, 2012 WL 668478, *13-14
(C.D. Ill. Feb. 28, 2012); In re Grand Jury Subpoena, 132 F Supp.2d
776, 778 (S.D. Iowa 2000); Kaplan v. Reed, 28 F. Supp.2d 1191, 1207
(D. Colo. 1998); see also  Rukavina v. Triatlantic Ventures, Inc.,
931 P.2d 122, 124 (Utah 1997).


    That said, the initial question is whether defendants should
have provided this information to plaintiffs in the form of
supplemental disclosures once Key Lighting deployed this corporate
tactic. We note that plaintiffs fail to point to any specific
discovery request that clearly covers this particular information
-- that is, the use of nominee officers -- but there is no question
that they sought throughout the discovery period documentation of
the corporate hierarchy, Briese, 2011 WL 280815, at *6; (Pls.' Mem.
of Law at 2-3), and there ought to have been no doubt that
disclosure of this use of nominees falls in that general category.
Moreover, this information is at least potentially relevant to the
issues in the case for two reasons. First, it appears that
defendants take the position that Ortiz and Langton are
presumptively protected from liability for patent infringement by
virtue of their positions as officers (although defendants' account
of Langton's role in particular has shifted over time). (Defs.'
Mem. of Law at 3-6). Hence the appearance of Ms. Miller's name as

the sole officer of Key Lighting as of November 2010 and defendants' apparent use of her services at an earlier date (according to Ms. Smith) may be probative of whether these two men have a proverbial leg to stand on when they claim officer status for the pertinent time period. Second, the use of nominee officers -- a conceded effort at concealment -- may affect the credibility of these two defendants when they testify as to their own conduct and their ties (or lack of ties) to Key Lighting and B2Pro. Finally, defendants' failure to provide this information may fairly be viewed as violating our order from July 2010 directing defendants to provide all documents responsive to requests by plaintiff for disclosure of the corporate structures of the defendant entities. (See July 22, 2010 Tr. 25-26).

That said, there remains the question of what consequence to visit on defendants for this omission, which is one of many in the course of this litigation. As we have discussed in earlier sanctions decisions in this case, the pertinent criteria for judging whether dispositive sanctions should be imposed for violations of court orders or persistent violations of discovery obligations include whether the conduct of the miscreant party was willful; the efficacy of non-dispositive sanctions; the duration of any violations; whether the non-compliant party has been warned of

the consequence of recalcitrance, and the extent of the prejudice to the discovering party. See, e.g., Briese, 2011 WL 280815, at *8 (citing cases). Application of these considerations suggests that the remedy sought by plaintiffs would be overkill.

We do not find that this violation, as distinct from many others in this case, was plainly willful. First, the non-disclosure took place after the close of discovery, and thus fell in the category of arguably required supplementation of prior discovery responses. Second, because the use of the nominee officer apparently did not change the fact that Ortiz remained as the de jure officer of Key Lighting, it may well not have occurred to defendants that the use of a nominee for purposes seemingly unrelated to the issues in this lawsuit was an event that required supplementation. As for the "duration" of the violation, since the installation of the nominee on November 3, 2010 took place some time ago, much time has passed, and we infer that plaintiffs would argue that this time was significant because, in the interim, the parties have briefed summary-judgment motions. That said, for reasons we discuss below we do not find that the omission at issue here caused plaintiffs significant or irremediable prejudice.

As for prior warnings to defendants, they have certainly been

9

warned repeatedly, by virtue of prior motion practice and court rulings, that they were exposed to potentially crippling sanctions for persistent discovery derelictions and violations of court orders. Nonetheless, in the absence of any prior focused argument concerning the relevance of their use of nominee officers, we cannot say that the prior warnings were the equivalent of, say, a court order directing that they produce this information on pain of dispositive sanctions.

Finally, we look to the twin considerations of prejudice and the utility of less severe measures. Had this information about Ms. Miller's listing as the only officer of Key Lighting been made available in late 2010, we infer that plaintiffs would have sought further documentation and perhaps depositions about this step. From what we have learned about the apparent purpose of the use of a nominee, that discovery likely would not have yielded information of immediate relevance to the current summary-judgment motion by plaintiffs, which focuses on whether defendants Key Lighting and B2Pro are guilty of patent infringement. (See Pls.' Mem. in Supp. of Mot. for Summ. J. of Willful Infringement of Claim 1 of U.S. Patent No. 5,841,146 at 11-24). Indeed, plaintiffs never raise the question of the personal liability of Ortiz and Langton in their initial summary-judgment moving papers and refer to it only in

10

brief conclusory terms in their reply memorandum of law. (Pls.'
Reply Mem. in Supp. of Summ. J. of Claim 1 at 3-5).[4] The knowledge
that defendants used a nominee officer in late 2010 or even earlier
would seem to be potentially relevant to plaintiffs' future efforts
at trial but would not have provided any assistance for their Rule
56 arguments.

To the extent that plaintiffs suggest that the late disclosure
of this information prejudices them because it implies further
delay and expense, that contention is largely unpersuasive.
Plaintiffs would be entitled to any documentation from defendants
as to their use of NSCN, but that production can be accomplished
quickly and at no cost to plaintiffs. As for discovery from NSCN,
if plaintiffs wish to pursue it, they should be entitled to do so
by subpoena, but that effort too should require a minimal
investment in time, and the expense would not be greater than that
they would have incurred if the same disclosure had been made at
the end of 2010.

Finally, we note that the information uncovered to this point

---

[4] Plaintiffs have also filed a cross motion for summary
judgment on the validity of claims 1-13 and 17-18 of U.S. Patent
No. 5,841,146. They do not raise the issue of personal liability
there either.

about the use of a nominee probably will have minimal impact on whether Ortiz and Langton may be held liable for the alleged infringements of Key Lighting and B2Pro. As we understand the matter, defendants contend that, absent a showing of alter-ego liability, these individuals may not be held responsible for any patent infringement by the defendant entities, and that this protection is a function of their status as corporate officers. (Defs.' Mem. of Law at 3-6). As for plaintiffs, they seem to assert only that for purposes of liability for trade-dress infringement, Ortiz and Langton may be held liable if they are shown to have been the driving forces behind the infringing activity. (Pls.' Summ. J. Reply Mem. of Law at 3-4). If we assume arguendo the accuracy of these statements of the law, the use of a nominee officer for Key Lighting at the end of 2010 would seem to have no effect on the strength of the parties' respective positions because (1) the use of a nominee would presumably not change the status of the individual defendants as the real corporate officers, if they are such, (2) any infringements occurring before November 2010 would have taken place at a time when the listed officers for Key Lighting were Ortiz and, for one period, also Langton (Muñoz Decl. Ex. 1), (3) the involvement of Ortiz and Langton in infringing activities will be proven by evidence entirely unrelated to whether there was a nominee officer in place for Key Lighting at any time

12

during the relevant period, and (4) plaintiffs' ability to demonstrate the involvement of these individual defendants in infringing activities will be substantially aided by the previously imposed sanction that found certain specified facts tending to prove the infringing actions of B2Pro as successor to BrieseUSA and BrieseNY. See Briese, 2011 WL 280815, at *11.

Given these circumstances, we conclude that the request by plaintiffs that Ortiz and Langton be deemed liable for any proven infringement by Key Lighting or B2Pro -- whether patent or trade-dress infringement -- is unwarranted, as it is unnecessary to avoid undue prejudice to plaintiffs by virtue of defendants' failure to disclose the use of a nominee officer for Key Lighting as of November 3, 2010.

                              CONCLUSION

For the reasons stated, we recommend that the District Court deny plaintiffs' motion for sanctions insofar as it seeks a ruling that defendants Ortiz and Langton be deemed liable for any patent or trade-dress infringements by Key Lighting or B2Pro. We further direct that defendants produce to plaintiffs by August 6, 2012 all documents in their possession or control that refer or relate to

                                 13

the use by any defendant of the services of Nevada State Corporate
Network, Inc. or of any nominee officer for the defendant entities.
If, upon receipt of these documents, plaintiffs wish to reopen the
depositions of Messrs. Ortiz or Langton to inquire about the use of
nominee officers, they may do so within fourteen days thereafter.


        Pursuant to Rule 72 of the Federal Rules of Civil Procedure,
the parties shall have fourteen (14) days from this date to file
written  objections  to  this  Report  and  Recommendation.   Such
objections shall be filed with the Clerk of the Court and served on
all adversaries, with extra copies to be delivered to the chambers
of the Honorable Laura T. Swain, Room 755, and to the chambers of
the undersigned, Room 1670, 500 Pearl Street, New York, New York
10007-1312. Failure to file timely objections may constitute a
waiver of those objections both in the District Court and on later
appeal to the United States Court of Appeals. See 28 U.S.C. §
636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(d); Thomas v. Arn, 474 U.S.
140, 150-52 (1985); Small v. Sec'y of Health & Human Servs., 892
F.2d 15, 16 (2d Cir. 1989).

Dated:  New York New York
        July 26, 2012

                    Respectfully submitted,

                    MICHAEL H. DOLINGER
                    UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing Report & Recommendation and Memorandum &
Order have been mailed today to:

M. Veronica Muñoz, Esq.
Gary Serbin, Esq.
Amir Reza Ghavi, Esq.
Hogan Lovells US LLP
875 Third Avenue
New York, New York 10022

Edward Kelly, Esq.
Tiajoloff & Kelly LLP
Chrysler Building
405 Lexington Avenue
37th Floor
New York, New York 10174

Edward C. Schewe, Esq.
Schewe & Assocs.
1600 Rosencrans Avenue
4th Floor
Manhattan Beach, California 90266