UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
BRIESE LICHTTECHNIK VERTRIEBS
GmbH and HANS-WERNER BRIESE,

          Plaintiffs,

-v-                                                No. 09 Civ. 9790 (LTS)(MHD)

BRENT LANGTON, B2PRO,
KEY LIGHTING, INC. and SERGIO ORTIZ,

          Defendants.
-------------------------------------------------------x

## MEMORANDUM ORDER

       Plaintiffs Hans-Werner Briese ("Mr. Briese") and Briese Lichttechnik Vertriebs GmbH (the "Briese Company") (collectively, "Plaintiffs") bring this action against Brent Langton ("Mr. Langton"), B2Pro, Key Lighting, Inc. ("Key Lighting") and Sergio Ortiz (collectively, "Defendants") alleging that Defendants have infringed U.S. Patent No. 5,841,146 ("the '146 patent"), which pertains to an umbrella-shaped light reflector for use in photography and videography. The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

       Plaintiffs move for summary judgment of willful infringement of Claim 1 of the '146 patent (docket entry no. 232). Defendants oppose the motion.[1] Four other motions are currently pending before the Court. Defendants move to strike portions of the February 27, 2012, Declaration of Plaintiffs' expert, Mark Krichever (docket entry no. 254), and Plaintiffs move to strike the March 15, 2012, Declaration of Sergio Ortiz and its Exhibit A (docket entry

---

[1] At times in the opposition papers, Defendants also seem to be making a cross-motion for summary judgment. To the extent this was the Defendants' intention, the cross-motion is unsubstantiated and is denied.

no. 260). Defendants also move to strike portions of Mr. Krichever's March 27, 2012, Declaration, portions of the Plaintiffs' Reply in support of their motion for summary judgment and Exhibit B to the Munoz Reply Declaration (docket entry no. 276). Finally, Mr. Ortiz renews his motion to dismiss the Complaint as against him for lack of personal jurisdiction (docket entry no. 246).

The Court has reviewed thoroughly the parties' submissions and arguments. For the following reasons, Defendants' motions to strike portions of Mr. Krichever's Declarations and portions of Plaintiffs' Reply are denied and Plaintiffs' motion to strike Mr. Ortiz's Declaration and its Exhibit A is granted in part. Plaintiffs' motion for summary judgment of willful infringement as to Claim 1 of the '146 patent is denied and Defendants' motion to dismiss for lack of personal jurisdiction over Mr. Ortiz is also denied.

## BACKGROUND

The following facts are undisputed except as otherwise noted.[2] Mr. Briese filed the '146 patent in the United States on April 15, 1997. The '146 patent consists of Claim One, an independent claim, and multiple dependent claims. Independent Claim 1 reads as follows (numerical references omitted):

> An umbrella reflector, comprising:
>
> a bearing body into which a tubular carrying means is inserted so that said tubular carrying means is displaceably held within said bearing body;

---

[2] Facts recited as undisputed are identified as such in the parties' statements of facts pursuant to Local Civil Rule 56.1 or drawn from evidence as to which there is no non-conclusory, contrary factual proffer. Citations to the parties' respective S.D.N.Y. Local Civil Rule 56.1 statements ("Defs' 56.1 Stmt.") and responses thereto ("Pls' 56.1 Stmt") incorporate by reference citations to the underlying evidentiary submissions.

a ring of articulated joints arranged on said bearing body and to which umbrella stretchers are hingedly attached, a reflecting umbrella covering fastened to umbrella stretchers;

a sliding means being displaceable on said tubular carrying means

a ring of toggle joints arranged on said sliding means to which expanding stretchers are mounted, the end of expanding stretchers being secured to umbrella stretchers by articulated expanding joints, said expanding stretchers being dimensioned so that when opening the reflectors, said sliding means is displaceable to a point past the plane of said articulated expanding joints, where the resilient restoring forces provide an arrestment holding the reflector in an open position, and

an element emitting electromagnetic or acoustic waves which is arranged at the end of said tubular carrying means facing the interior of said umbrella reflector so that by displacing said tubular carrying means within said bearing body said element is moved into different positions in relation to the opened reflector.

('146 patent, col. 4:54-5:14).

Mr. Langton operated a photographic equipment rental business called Briese USA and bought original Briese photographic equipment. On August 27, 1999, Mr. Briese filed suit against another company in which the infringement of the instant '146 patent was asserted. Hans-Werner Briese v. Profoto A.B. et al., No. 99-08727 NM (BQRx) (C.D. Cal. 1999) (the "Profoto suit"). Plaintiffs allege that Mr. Langton assisted Mr. Briese, who resides in Germany, with the case. (Pls' 56.1 Stmt ¶¶ 37-38). When the Profoto case settled, Plaintiffs allege, Mr. Langton was aware of the details of the settlement agreement, in which Profoto admitted the validity of the '146 patent. (Pls' 56.1 Stmt ¶ 39). Defendants contend that there were questions raised at that time about the patent's validity. (Defs' 56.1 Stmt ¶ 39).

The business relationship between the parties ended in 2007 and Plaintiffs stopped selling their products to Mr. Langton. Mr. Langton then filed a trademark infringement suit against Mr. Briese and the Briese Company, seeking to use the name "Briese" for his

products. Mr. Briese counterclaimed, winning a preliminary injunction against Mr. Langton. Briese USA, Inc. v. Briese Lichttechnik Vertriebs GmbH, No. 07-2735 GHK (CWx) (C.D. Cal 2008). The parties entered into a Mutual Release and Settlement Agreement in January of 2011. (Defs' 56.1 Stmt ¶ 40). Mr. Langton changed the name of his company from Briese USA to B2Pro (a d/b/a of Key Lighting), but Plaintiffs allege that B2Pro infringed and continues to infringe the '146 patent.

Since this suit commenced, Defendants and their counsel have engaged in various forms of pretrial misconduct, resulting in Judge Dolinger's January 14, 2011, Order that the following facts are established and admissible:

> 1. B2PRo is the successor corporation to BrieseUSA and BrieseNY.
>
> 2. B2Pro arranged for the design and manufacture of a series of reflector umbrellas after being in possession of the patented Briese reflector umbrellas.
>
> 3. B2Pro has deliberately failed to turn over to plaintiffs, as legally required, all documents reflecting defendants' claimed independent research for and design of their allegedly infringing reflector umbrellas and their component parts.
>
> 4. B2Pro has deliberately failed to turn over to plaintiffs, as legally required, all documents reflecting defendants' marketing and advertising of their allegedly infringing reflector umbrellas and all documents reflecting revenues from the rental of those allegedly infringing umbrellas.
>
> 5. Defendants appropriated without authorization the company name of the plaintiffs in an attempt to misappropriate the goodwill of the company.

(Memorandum & Order of Mag. J. Dolinger, Jan. 14, 2011, making findings of misconduct, docket entry no. 162, at 33-34 ("January 14, 2011, Order")). Judge Dolinger also held that: "plaintiffs will be entitled to an instruction at trial that the failure of the defendants to provide

required documents may permit an inference that defendants deliberately infringed the plaintiffs' patents in question and that they earned substantial revenues as a consequence." (Id. at 34).

The accused infringing devices are the B2Pro adjustable focus umbrella reflectors in the following sizes: 40 Focus Umbrella Reflectors; 77 Focus Umbrella Reflectors; 90 Focus Umbrella Reflectors; 100 Focus Umbrella Reflectors; 115 Focus Umbrella Reflectors; 125 Focus Umbrella Reflectors; 140 Focus Umbrella Reflectors; 180 Focus Umbrella Reflectors; 220 Focus Umbrella Reflectors and 330 Focus Umbrella Reflectors. (Pls' Stmt. ¶ 5). As part of the instant motion practice, Plaintiffs' expert witness, Mark Krichever, performed a detailed infringement analysis of the alleged infringing umbrella reflectors from the perspective of one skilled in the art at the time of the invention. ("Krichever Decl., Feb. 27, 2012"). Using the Court's claim construction, the constructions agreed to by the parties and adopted by the Court, and the ordinary and customary meaning for the remaining terms of Claim 1, Mr. Krichever concluded that Defendants' umbrella reflectors literally contained each and every element of Claim 1 of the '146 patent. (Krichever Decl., Feb. 27, 2012, ¶¶ 37-38). To perform his analysis, Mr. Krichever used photographs bates stamped BH008923-8933 and BH008958-9036 and reviewed B2Pro's descriptions of the allegedly infringing umbrella reflectors on B2Pro's website, "www.B2Pro.com." (Pl. Mot. for Sum. Judgment at 13-14).

## DISCUSSION[3]

Where, as here "a decision on the motion[s] to strike may affect [Plaintiffs'] ability to prevail on summary judgment, it is appropriate to consider [the motions to strike] prior to [the

---

[3] When "deciding issues in [a] patent case, district court applies law of circuit in which it sits to nonpatent issues and law of Federal Circuit to issues of substantive patent law." In re Omeprazole Patent Litigation, 490 F.Supp.2d 381 (S.D.N.Y. 2007).

Plaintiffs' motion for] summary judgment." <u>Rund v. JPMorgan Chase Group Long Term Disability Plan</u>, 10 Civ. 5284, 2012 WL 1108003, at *1 (S.D.N.Y. Mar. 30, 2012).

<u>Defendants' Motion to Strike Mark Krichever's First Declaration</u>

Defendants move to strike paragraphs 19 and 26-37 of the February 27, 2012, Krichever Declaration under Federal Rules of Civil Procedure 16(f) and 30(b)(6) and Federal Rule of Evidence 702. Defendants argue principally that Mr. Krichever's qualifications are insufficient, that the factual support for his Declaration is inadequate because he examined photographs of the accused device rather than the device itself, and that Mr. Krichever's statement, that Defendants' allegedly infringing conduct manifested in "making, using and renting" the accused devices, is inconsistent with Plaintiffs' previously-disclosed Patent Infringement Contentions, which characterized the infringing conduct as "intentional copying, rental, sale and offer for sale of the infringing devices . . . ."[4] (Krichever's Decl., Feb. 27, 2012, ¶ 19). Defendants further contend that the inability of Plaintiffs' Rule 30(b)(6) deposition witnesses to supply information in response to questions regarding the factual basis of, <u>inter alia</u>, Plaintiffs' contentions that Defendants sold or rented the accused devices precludes Plaintiffs from seeking to prove such activity. None of these arguments is availing.

Federal Rule of Evidence 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise, if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data, (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and

---

[4] The Patent Infringement Contentions to which both parties refer, dated April 30, 2010, have not been filed on ECF. The parties are directed to file these Infringement Contentions and any responses on ECF promptly upon receipt of this Order.

methods to the facts of the case.

Fed. R. Evid. 702. In patent cases, expert testimony is "useful to a court for a variety of purposes, such as to provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." Phillips v. AWH Corp., 415 F.3d 1303, 1318 (Fed Cir. 2005). According to his Declaration, Mr. Krichever has a Master's degree in Opto-Mechanical Engineering and has more than 40 years of experience working as an opto-mechanical engineer. Defendants' contention that Mr. Krichever is unqualified to opine centers on the lack of evidence that he has ever handled physically an umbrella reflector. Mr. Krichever's academic and experiential engineering background is, however, sufficient to qualify him as an expert in the engineering issues that are in dispute in this litigation.

Moreover, an expert is not required to personally inspect the accused device to render valid opinions. Federal Rule of Evidence 703 (which governs the basis of opinion testimony by experts) provides that "[an] expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703 (emphasis added). "[T]he Federal Rules of Evidence establish that an expert need not have obtained the basis for his opinion from personal perception." Monsanto Co. v. David, 516 F.3d 1009, 1015 (Fed. Cir. 2008). Mr. Krichever's Declaration proffers that he read and examined a substantial amount of pertinent material (including the '146 patent, the file history, deposition transcripts and the B2Pro website), and his opinions are supported by his cited evidence.

Mr Krichever's reference to "making, using and renting" the accused devices is not inconsistent with the Plaintiffs' Infringement Contentions, which state that Defendants

infringed the patent by the "intentional copying, rental, sale and offer for sale of the infringing devices." (Krichever's Decl., Feb. 27, 2012, ¶ 19). Clearly, the alleged copies of the umbrella reflectors were "made" at some point and it can be no surprise to Defendants, who offer their devices to the public on a website with pictures and descriptions of how the devices operate, that Plaintiffs are complaining of "use," which is a way to characterize the rental and/or sales of the accused devices. Mr. Krichever's reference to a 125 model accused device is supported by the B2Pro website screen shots that Plaintiff has offered. The question of whether or not B2Pro actually rents or sells this 125 focus umbrella reflector constitutes a disputed issue of fact.

Finally, Defendants' contention that Judge Dolinger's remark, in the January 24, 2011, Order, that Plaintiffs are bound by the 30(b)(6) witnesses' disclaimers of personal knowledge in response to "specific factual questions," precludes Plaintiffs from seeking to prove that Defendants sold or rented the accused devices is unfounded. (Memorandum & Order of Mag. J. Dolinger, January 24, 2011, partially granting Defendants' motion to compel, docket entry no. 167 ("January 24, 2011, Order")). Defendants have selectively quoted only a portion of the January 24, 2011, Order dealing with this issue. Reading the whole of the Order demonstrates that, rather than granting Defendants' request to preclude parts of Plaintiffs' case based upon allegedly non-responsive answers, Judge Dolinger denied Defendants' requests for sanctions, finding that, "to the extent that [the 30(b)(6) witnesses] were asked properly phrased and permissible questions about factual details, they were able to provide responsive testimony." (January 24, 2011, Order, at 17). Judge Dolinger found that the only questions that the 30(b)(6) witnesses were unable to answer were questions that were overly general, vague or improperly calling for legal conclusions, and that the "failure of defendants' counsel to focus on specific purely factual details does not demonstrate that the witnesses failed to fulfill their required roles

under Rule 30(b)(6)." (Id. at 17). Accordingly, the motion to strike portions of the February 27, 2012, Declaration of Mr. Krichever is denied.

Plaintiffs' Motion to Strike Sergio Ortiz's Declaration

Plaintiffs move to strike the March 15, 2012, Declaration of Sergio Ortiz and its Exhibit A, seeking costs and expenses, including reasonable attorneys' fees pursuant to Federal Rules of Civil Procedure 37(c)(1) and 56(c)(4) and Judge Dolinger's January 14, 2011, Order. Based on his personal experience and background with the B2Pro umbrella reflectors, Mr. Ortiz testifies that three elements of Claim 1 of the '146 patent do not appear in the B2Pro umbrella reflectors. Plaintiffs contend that Mr. Ortiz is offering expert testimony, which was not properly disclosed, and that Defendants are using Mr. Ortiz's Declaration to "sandbag" them.

Federal Rule of Evidence 701 allows a lay witness to testify to opinions which are:

> (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. Witness testimony is excluded pursuant to Rule 701 when the witness's testimony is "based on the witness's scientific, technical, or specialized knowledge rather than observation." New York v. Solvent Chemical Co., Inc., 453 Fed. App'x 42, 47 (2d Cir. 2011). In patent cases, the testimony relating to the interpretation and application of patent claims by persons of ordinary skill in the art generally involves "scientific, technical or specialized knowledge," as is the case here, and thus, requires expert testimony. See e.g. Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed Cir. 1995) (describing how courts should "ascertain the meaning of claims" by considering the claims themselves, "the specification, [ ]

the prosecution history" and "[e]xpert testimony, including evidence of how those skilled in the art would interpret the claims").

With over fifteen years of experience working with, developing and repairing lighting equipment, including umbrella reflectors from Briese and B2pro, Mr. Ortiz can testify as a lay witness on the structure and operation of the B2Pro umbrella reflectors. However, as a lay witness, Mr. Ortiz cannot parse the terms of the patent claims to opine as to whether the patent reads on the B2Pro umbrella reflectors. Nor, given the post-discovery status of this litigation, can Mr. Ortiz testify as to those matters as an expert. Mr. Ortiz was never disclosed as an expert as required by Federal Rule of Civil Procedure 26. Mr. Ortiz's infringement opinion (Ortiz Decl., Mar. 15, 2012, ¶ 2) is belated expert rebuttal opinion and is therefore stricken, as is Mr. Ortiz's testimony mapping the claim language of the patent to the structures in the accused B2Pro devices (Ortiz Decl., Mar. 15, 2012, ¶¶ 3 and 5) (e.g., interpreting the terms "sliding means," "displaceable on" and "displaceably held within").

In Judge Dolinger's January 14, 2011, Order, he precluded Defendants "from utilizing, either on summary judgment or at trial, any documents not produced to plaintiffs during the specified discovery period." (January 14, 2011, Order at 33). Exhibit A to Mr. Ortiz's Declaration was not produced during discovery and therefore, is barred by the January 14, 2011, Order. The Court assumes for the purposes of the instant motion practice that the measurement and dimensions proffered by Mr. Ortiz correspond to the umbrella reflector parts that were previously provided to Plaintiffs for inspection. If Plaintiffs contend that the measurements and dimensions do not correspond to the umbrella parts that were produced for inspection, the application to strike the representations as to dimensions may be renewed in connection with trial.

Accordingly, Plaintiffs' motion to strike Mr. Ortiz's Declaration to the extent that

it offers any infringement opinion or claim construction is granted. Defendants' motion to strike Exhibit A is also granted. Mr. Ortiz's Declaration will only be considered in connection with the instant motion practice for its purported description of the physical structure and operation of the B2Pro umbrella reflectors. The Court denies the Plaintiffs' request for an award of costs and expenses in connection with this motion.

Motion to Strike Portions of the Second Declaration of Mark Krichever and Plaintiffs' Reply

Defendants also move to strike paragraphs 3-7 of the March 27, 2012, Second Declaration of Mark Krichever, pages 3-9 of Plaintiffs' Reply, filed March 27, 2012, and Exhibit B to the Munoz Reply Declaration filed by Plaintiffs in support of their motion for summary judgment, on the grounds that the Plaintiffs' Reply papers are procedurally improper, raise new arguments and proffer new evidence and were late-filed.

"[R]eply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party." Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G., 215 F.3d 219, 226-27 (2d Cir. 2000) (finding among other things, that the reply submission was the first opportunity plaintiffs had to rebut the defendant's argument) (internal quotations and citations omitted). Plaintiffs' Reply and the Munoz Reply Declaration were provided in direct response to Defendants' arguments and Mr. Ortiz's Declaration. Plaintiffs raise no new legal arguments in their Reply. The Court therefore denies the Defendants' motion to strike pages 3-9 of the Plaintiffs' Reply brief and Exhibit B to the Munoz Reply Declaration.

Nor does Mr. Krichever's March 27, 2012, Declaration introduce any new arguments. It only responds to arguments raised in Defendants' Opposition to Plaintiffs' Motion

for Summary Judgment and the Declaration of Mr. Ortiz. Mr. Krichever's interpretation of the claim terms in the March 27, 2012, Declaration is consistent with the intrinsic record and with his first declaration. Accordingly, the motion to strike Mr. Krichever's March 27, 2012, Declaration is denied.

Plaintiffs' Motion for Summary Judgment of Willful Infringement of Claim 1 of '146 Patent

As in any other type of action, summary judgment is appropriate in patent cases where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). See Union Carbide Corp. v. Am. Can Co., 724 F.2d 1567, 1571 (Fed. Cir. 1984). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party initially carries the burden of showing that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once that showing has been made, the non-moving party may not rely solely on "[c]onclusory allegations, conjecture and speculation," but must demonstrate that there is a genuine issue for trial. Niagara Mohawk Power Corp. v. Jones Chem. Inc., 315 F.3d 171, 175 (2d Cir. 2003) (internal citations and quotations omitted). All ambiguities and factual inferences should be drawn in favor of the non-moving party "if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007).

When a plaintiff claims that there has been a literal infringement of a patented product, the court must determine "as a matter of law, the correct claim scope, and then [compare] the properly-construed claim to the accused device to determine, as a matter of fact, whether all of the claim limitations are present, either literally or by a substantial equivalent, in

the accused device." Johnson Worldwide Associates, Inc. v. Zebco Corp., 175 F.3d 985, 988 (Fed Cir. 1999). A literal patent infringement case is "amenable to summary judgment" when "the parties do not dispute any relevant facts regarding the accused product but disagree over [claim interpretation]." Athletic Alternatives, Inc. v. Prince Mfg. Inc., 73 F.3d 1573, 1578 (Fed. Cir. 1996). To find that an accused product literally infringes a patent claim, "'every limitation of the patent claim [must] be found in the accused device.'" Wenger Mfg. Inc. v. Coating Mach. Sys., Inc., 239 F.3d 1225, 1231 (Fed Cir. 2001) (internal quotations and citations omitted).

      For substantially the reasons set forth in Mr. Krichever's Reply Declaration, there appear to be no genuine material factual disputes regarding any aspect of the structure of the B2Pro umbrella reflector other than the arrestment mechanism. Mr. Ortiz's Declaration, does, however, frame a genuine factual dispute regarding the arrestment mechanism, precluding the resolution of the infringement issue on this motion for summary judgement. Claim 1 of the '146 patent requires that the "resilient restoring forces provide an arrestment holding the reflector in an open position." According to Mr. Ortiz, mechanical contact between two aluminum tubes on the B2Pro umbrella reflectors, rather than the "resilient restoring forces," provides the arrestment holding the reflector open. (Ortiz's Decl., Mar. 15, 2012, ¶ 4). The question of whether the arrestment element of Claim 1 reads on B2Pro's accused devices is a disputed issue of fact that must go to the jury. This is the only aspect of the descriptions of the B2Pro umbrella reflector provided by Mr. Ortiz in his Declaration that raises any material factual dispute. Literal infringement requires that every element of the claimed invention be found in the accused device. Wenger Mfg. Inc., 239 F.3d at 1231.

Because a genuine dispute of material fact precludes resolution of the infringement issue, summary judgment must also be denied as to the issue of whether any infringement was willful.

Mr. Ortiz's Motion to Dismiss for Lack of Personal Jurisdiction

The final motion pending before this Court is Mr. Ortiz's renewal of his motion to dismiss pursuant to the Court's November 9, 2010, Order ("November 9, 2010, Order"), which denied Mr. Ortiz's pre-discovery Rule 12(b)(2) motion without prejudice for renewal after discovery. Mr. Ortiz moves, under Federal Rule of Civil Procedure 12(b)(2), for an Order dismissing the Complaint against him for lack of personal jurisdiction.

After the parties have conducted discovery, plaintiff's burden to establish personal jurisdiction is met by "an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant." Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990). If the material facts are not contested, the Court determines whether Plaintiff's factual averments are sufficient to make out a prima facie case for the exercise of jurisdiction. Id. Personal jurisdiction may be exercised over any defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Federal Rule of Civil Procedure 4(k)(1)(a) (West 2012). If a plaintiff can establish a factual predicate for jurisdiction under the laws of the forum state, the court must then consider whether an exercise of jurisdiction under these laws is consistent with federal due process requirements. Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242 and 247 (2d Cir. 2007).

Plaintiffs assert that this Court has jurisdiction over Mr. Ortiz pursuant to sections 302(a)(1) and 302(a)(3) of New York's Civil Practice Law and Rules ("CPLR"). Under New

York's long-arm statute, CPLR § 302(a)(1), a court may exercise specific jurisdiction over a non-domiciliary where: (1) the non-domiciliary defendant transacts business within New York; and (2) the claim against the non-domiciliary defendant arises directly out of this activity. Best Van Lines, 490 F.3d at 246. A non-domiciliary "transacts business" under CPLR § 302(a)(1), when he "purposefully avails [himself] of the privilege of conducting activities within [New York] thus invoking the benefits and protections of its laws." Cutco Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986) (internal citations and quotations omitted). A cause of action is said to "arise out of" a defendant's business transaction in New York under § 302(a)(1) when there is an "articulable nexus" or a "substantial relationship" between transactions within New York and the claim asserted. Kronisch v. United States, 150 F.3d 113, 130 (2d Cir. 1998) (internal citations omitted). In evaluating contacts, courts look to the "existence of an office in New York; the solicitation of business in New York; the presence of bank accounts or other property in New York; and the presence of employees or agents in New York." J.L.B. Equities, Inc. v. Ocwen Fin. Corp., 131 F. Supp. 2d 544, 548 (S.D.N.Y. 2001).

      Here, Defendants' own factual proffers suffice to provide the requisite prima facie basis for the exercise of personal jurisdiction over Mr. Ortiz. Defendants represent that Mr. Ortiz is an officer of Key Lighting, which does business as B2Pro. Mr. Ortiz has testified that he is president and sole owner of B2Pro, which was formerly known as Briese USA (and, as Briese USA, was a partnership co-owned by Mr. Ortiz with Mr. Langton). (Docket entry no. 64, Ex. 3 at 124, 142). B2Pro has offices and engages in the business of renting photographic equipment (including the accused reflecting umbrellas) in New York as well as in Los Angeles. (Ortiz Dep. Tr. 43:18-21, 80:21-23). Mr. Ortiz has also admitted that he oversees the company's creation and rental of umbrella reflectors and other equipment and has been involved in servicing

customers in New York. (Docket entry no. 64, Ex. 3 at 45:18-24, 48:5-16, 51:13-23, 53:6-11, 121:13-14, 132:23-133:1). Mr. Ortiz also maintains files relating to the business in the New York B2Pro office. (Ortiz Dep. Tr. 113:13-114:24, 217:3-12)

These activities demonstrate that Mr. Ortiz is involved in the transaction of the umbrella reflector rental and servicing business in New York. In that all of B2Pro's focus umbrella reflector offerings are accused infringing devices, the claims in this action clearly arise out of the New York-related business activity. The Court therefore has personal jurisdiction over Mr. Ortiz pursuant to CPLR § 302(a)(1).

Plaintiffs also contend that Mr. Ortiz is subject to personal jurisdiction in New York because his alleged out-of-state tortious acts caused harm in New York State under CPLR § 302(a)(3). To establish jurisdiction under CPLR § 302(a)(3), the plaintiff must show that the cause of action "arises out of a tort committed outside of New York but the tort causes harm within New York, the defendant expected or should reasonably have expected the act to have consequences in the state and the defendant derives substantial revenue from interstate or international commerce." Citibank v. City Nat'l, 97 F. Supp. 2d 549, 568 (S.D.N.Y. 2000) (citing C.P.L.R. § 302(a)(3)). A corporate officer may be subject to personal jurisdiction in New York if it is established that "the transaction at issue performed by the corporation . . . [was] with the knowledge and consent of the officer and the officer [ ] exercised control over the corporation in the transaction. Kinetic Instruments v. Lares, 802 F. Supp. 976, 984 (S.D.N.Y. 1992). Individual defendants should have known that they could be liable for their corporation's actions when they "plainly participated in and approved of the infringement of the plaintiff's patent." Fromson v. Citiplate, 886 F.2d 1300, 1304 (Fed. Cir. 1989).

It is undisputed that B2Pro arranged for the design and manufacture of the umbrella reflectors after being in possession of the patented Briese devices. The company then rented the allegedly infringing devices; these transactions were within the knowledge and consent of Mr. Ortiz, who also exercised control over the transactions. As Mr. Ortiz said, "I don't have to justify to anyone in our company. I'm the final word. If I decide how it's to be made, what it's going to cost, I don't have to check with anybody. I just do it." (Ortiz Dep. Tr. 164:22-25.) Furthermore, as an owner of Key Lighting, d/b/a B2Pro, Mr. Ortiz derives substantial revenue from interstate commerce. For these reasons, and for substantially the reasons discussed in connection with CPLR § 302(a)(1), the Court is authorized to exercise jurisdiction over Mr. Ortiz pursuant to section 302(a)(3) of the CPLR.

The final step in a jurisdictional challenge is to determine whether due process is violated by the exercise of jurisdiction over the defendant. Due process requires that a defendant "not present within the territory of the forum" have "certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotations and citations omitted). Once a defendant's contacts with a forum state rise to this minimum level, to defeat jurisdiction, the defendant must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985).

The Court has again considered thoroughly the factors relevant to the due process analysis, as outlined in the Court's November 9, 2010, Order, and concludes that it does not violate due process to exercise jurisdiction over Mr. Ortiz. (See November 9, 2010, Order at 8.) Mr. Ortiz has purposefully availed himself of the privilege of doing business in New York, by

running a business that is present and transacts business in the state. Mr. Ortiz is involved in the selling or renting of the allegedly infringing products in New York. Therefore, the cause of action here, patent infringement, arises out of activity directed to New York and it does not offend "notions of fair play" that Mr. Ortiz would be susceptible to being hauled into court in New York.

## CONCLUSION

For the foregoing reasons, Defendants' motions to strike portions of Mr. Krichever's Declarations, the Plaintiffs' Reply and Exhibit B to the Munoz Declaration are denied for the reasons indicated herein. Plaintiffs' motion to strike Mr. Ortiz's Declaration and its Exhibit A is granted in part. Plaintiffs' request for an award of costs and expenses in connection with the motion is denied. Plaintiffs' motion for summary judgment of willful infringement is denied and Mr. Ortiz's motion to dismiss the Complaint for lack of personal jurisdiction is denied. This Memorandum Order resolves docket entry numbers 232, 246, 254, 260, and 276.

SO ORDERED.

Dated: New York, New York
November 8, 2012

_____
LAURA TAYLOR SWAIN
United States District Judge