Edward P. Kelly
**TIAJOLOFF & KELLY LLP**
Chrysler Building - 37th Floor
405 Lexington Avenue
New York, New York 10174
Telephone:  (212) 490-3285
Facsimile:  (212) 490-3295


Edward C. Schewe (pro hac vice)
**SCHEWE & ASSOCIATES**
1600 Rosecrans Avenue, 4th Floor
Manhattan Beach, California 90266
Telephone:  (310) 321-7892
Facsimile:  (310) 321-7891


Attorneys for Defendants
Key Lighting, Inc., et al.


## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIESE LICHTTECHNIK VERTRIEBS GmbH, et al.<br><br>      Plaintiffs,<br><br>v.<br><br>B2PRO, et al.,<br><br>      Defendants,<br><br><br><br>AND RELATED COUNTERCLAIMS | No. 09 Civ 9790 (LTS) (MHD)<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS' JOINT MOTION IN LIMINE TO EXCLUDE TESTIMONY AND STRIKE EXPERT REPORT OF CHRISTINE MEYER** |

## I.       INTRODUCTION

Defendants Key Lighting, Inc.  dba B2Pro, Brent Langton and Sergio Ortiz hereby move

the Court for an order excluding trial testimony from and striking the expert report of Christine

Meyer.

Plaintiffs seek "reasonable royalty" damages in this case under 35 USC § 284, but their

damages expert chose to base opinions on unreliable evidence and speculation rather than sound

economic and factual predicates.  Meyer substituted speculation in place of evidence of record

and, in accordance with the guidelines of recent Federal Circuit case law, this testimony must

now be excluded.  In a series of decisions, the Federal Circuit has now made it clear that district

courts must rigidly enforce evidentiary standards for the reasonable royalty calculation of patent

damages awards.

## II.      LEGAL STANDARD FOR PATENT DAMAGES EXPERTS

Under Fed.R.Evid. Rule 702, a court may only permit opinion testimony from a qualified

expert if such testimony will assist the trier of fact to understand the evidence or to determine a

fact in issue and (1) the testimony is based upon sufficient facts or data, (2) the testimony is the

product of reliable principles and methods, and (3) the witness has reliably applied the principles

and methods to the facts of the case." Fed.R.Evid. 702.

The district court acts as a gatekeeper to determine whether expert testimony is "not only

relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 US 579, 589, 113 SCt 2786,

125 L.Ed.2d 469 (1993).

In the context of reasonable royalty damages in patent actions, the Federal Circuit

requires "sound economic and factual predicates" for any expert testimony.  *Whitserve, LLC v.*

1

*Computer Packages, Inc*., 694 F.3d 10, 34 (Fed. Cir. 2012) (vacating reasonable royalty damage award); *Wordtech Systems, Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1322 (Fed. Cir. 2010) (reversing denial of Defendants' Rule 59(a) motion on reasonably royalty damages and remanding for new trial on damages); *Riles v. Shell Exploration & Production Co.*, 298 F.3d 1302, 1311-1313 (Fed. Cir. 2002) (vacating reasonable royalty damage award); *Lucent Techs, Inc. v. Gateway. Inc.*, 580 F.3d 1301, 1324-39 (Fed. Cir. 2009) (reversing denial of JMOL on reasonable royalty damages); *ResQNet.com, Inc. v. Lanson, Inc.*, 594 F.3d 860, 868-873 (Fed. Cir. 2010) (reversing reasonable royalty damage award based "on speculative and unreliable evidence" and noting the trial court "must carefully tie proof of damages to the claimed invention's footprint in the market place."); *IP Innovation LLC v. Red Hat, Inc*., 705 F.Supp.2d 687, 689 (ED Tex 2010) (Chief Judge Rader of the Federal Circuit, sitting by designation) ("A reliable reasonable royalty calculation depends on trustworthy evidence of both the royalty base and the royalty rate").

## II.     MEYER'S ROYALTY IS BASED ON UNRELIABLE EVIDENCE AND IRRELEVANT INCOMPLETE FACTUAL PREDICATES

Meyer's report failed to consider the claims of the patent-in-suit, failed to consider the evidence of record and failed to consider economic reality.   See Meyer report, Schewe Decl. Ex. 12.  Meyer errs by concluding that a reasonable royalty would be equal to the alleged total profits realized by B2Pro based on estimates by Meyer who apparently did not examine the B2Pro invoices listed in her report.  Meyer at 3, Item 3.  Indicative of these errors is that Meyer's conclusions would result in a rate of approximately 99% of alleged revenue.

First, Meyer's cost analysis fails.  Meyer failed to consider the claims of the patent-in-suit are directed only to an assembled umbrella reflector.  Instead, Meyer bases her opinion on disassembled spare parts, a "frame", "a reflective skin" and "a lamp" (again, all disassembled contrary to claim 1) and then was asked by counsel for Briese to assume a cost of manufacturing of $700.  Meyer at 12.  However, Meyer failed to include at least a focus tube (tubular carrying means (1)) required by the claims.  Consequently, Meyer failed to include the costs of manufacturing all constituent parts of the assembled umbrella reflector including their respective tooling costs and the costs of the molds for all the parts.

Meyer further erred when she failed to include the costs of assembling the umbrella reflector, i.e. the personnel required to put the constituent parts together into an assembled form, as required by the claims.  That was error.  Manufacturing constituent parts is not the same as the manpower needed to assemble the reflector into an operable unit as required by the claims.  See *Deepsouth Packing Co. v. Laitram Corp.,* 406 US 518, 528-529, 92 SCt 1700 (1972) (combination patent protects only against the operable assembly of the whole and not the manufacture of its parts).  Meyer's report must be stricken for this reason too.

Second, Meyer's calculation of alleged revenue suffers from error and misstatements.  Meyer apparently failed to consider Defendant B2Pro's invoices that were produced and are included under the Documents Considered in the Meyer report.  Meyer Exh. 2 at 3 listing B2Pro's produced documents BH 15571-15573;  USA 11027-11034;  USA 15363-17288.   See copies of the referenced documents as produced by Defendants, Schewe Decl. Ex. 13.

This erroneous analytical gap, failure to consider evidence of record, also demonstrates the unreliability of Meyer.  Although Meyer claims she lacked the number and type of accused device at issue (Meyer at 12) that assertion is contradicted by the Meyer report which lists the

B2Pro invoices where she could determine those items directly.   See Schewe Decl. Ex. 12.

Meyer never explains this internal inconsistency within her own report and her silence on this

error is deafening.

Instead, Meyer conjures up a series of estimates (Meyer Exh. 3) but Meyer could have

calculated a revenue number from the B2Pro invoices showing pricing and revenue.  Indicative

of the fundamental errors, Meyer Exhibit 3 includes three columns by date ranges but

inexplicably for the row labeled "B2Pro annual revenue for Focus Umbrellas (3)", two of the

three entries are blank.  See Meyer Exh. 3.  That makes no sense when compared to the actual

invoices.  Meyer's report must be stricken for this reason.

Third, Meyer committed additional errors by failing to consider the lack of profitability

of the Plaintiffs' product.  Evidence of the profitability of the patentee's product is highly relevant

under the *Georgia-Pacific* factors.  See *Georgia-Pacific Corp.*, 318 F.Supp. at 1127  (patentee's

profitability "of major relevance to the determination of the amount of royalty that USP would

accept from GP and that GP would offer").  See also *Medtronic Sofamor Danek USA, Inc. v.*

*Globus Med., Inc.*, 637 F.Supp.2d 290, 311 (ED Penn 2009) (trial court considered commercial

success of and gross profit margins on both the patentee's system and the defendant's accused

system in a reasonable royalty analysis).

Meyer failed to consider the evidence that Plaintiffs' product was not commercially

successful and in fact was not profitable.   Mr. Ortiz's previously testified in April 2008 that Mr.

Briese told him that Mr. Briese was not profitable and that the Brieses were making money from

the rental studio, not from the equipment and not from the repairs (4/1/2008 Ortiz Depo at

143:11-145:8, Schewe Decl. Ex. 15) and that Briese was thinking of closing their shop.  4/1/2008

Ortiz Depo at 143: 25 - 144:14, Schewe Decl. Ex. 15).

4

There is no contrary evidence from Plaintiffs.  Plaintiffs failed to produce documentation on their alleged costs in response to Defendant's Request No. 44.  See 1/25/2011 Order at pp. 12-13 [doc #167].  Defendants have been unable to locate any such cost documents from Plaintiffs. Plaintiffs further failed to produce all the underlying documents of purported revenues in the U.S. to support Plaintiffs' alleged Summary of Revenues.   Defendants are separately moving to exclude Plaintiffs' Summary (documents BH 7029-7068) due to Plaintiffs' failure to produce the underlying documentation.

Meyer erred by failing to consider the relevant facts about Briese's lack of profitability. Meyer offers no explanation why this lack of profitability was omitted from her report, despite the fact Meyer admitted to interviewing both Mr. Briese and Jutta Briese on November 22, 2011. Meyer Exh. 2 at p. 2.  Meyer offers nothing to rebut Mr. Ortiz's testimony.

Consequently, Meyer's royalty rate of approximately 99% of her estimated gross revenue lacks sound economic and factual predicates.   Her report must be excluded as speculative and out of line with economic reality.  See *Whitserve*, 694 F.3d at 33 (royalty rate suggested by the patentee's expert "does not support the verdict because his testimony is conclusory, speculative and, frankly, out of line with economic reality.").

## III.    MEYER'S ANALYSIS OF THE GEORGIA-PACIFIC FACTORS LACKS SOUND ECONOMIC AND FACTUAL PREDICATES

Meyer's analysis of the Georgia-Pacific factors is unreliably flawed too.   Factor 8 is "[t]he established profitability of the product made under the patent; its commercial success; and its current popularity."  *Georgia-Pacific,* 318 F. Supp. at 1120.   Meyer failed to consider the evidence that Briese's product is not profitable.  Meyer's conclusions that there are no non-

5

infringing alternatives (Meyer at 10) and that there are no acceptable substitutes such as a non-focus umbrella (Meyer at 10) is unsupported speculation contradicted by the evidence of record.

Mr. Ortiz testified that there are all kinds of different reflector umbrella devices from a whole bunch of different companies with competitive products, including Pro Photo, Alan Comb [sic], Braun Color and a few Chinese companies.  See Ortiz 9/29/2010 Ortiz Depo at 36:20-37:5; 216:16-217:2, Schewe Decl. Ex. 16.

Meyer's analysis of Factor 9 "[t]he utility and advantages of the patent property over the old modes or devices", of Factor 10 "[t]he nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention", of Factor 12 "[t]he portion of the profit or of the selling price that may be customary . . . to allow for the use of the invention", and of Factor 13 "[t]he portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer" are equally flawed for the same reasons as her analysis of Factor 8.

For Factor 15, "results of hypothetical negotiation between licensor and licensee", Meyer substituted her speculation for the evidence of record and ended up with only the alleged profits of B2Pro.  That analysis is in error.  See *Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d 1554, 1557 (Fed. Cir. 1986) ("The determination of a reasonable royalty, however, is based not on the infringer's profit, but on the royalty to which a willing licensor and a willing licensee would have agreed at the time the infringement began.").  Meyer should not be allowed to testify because her opinions would certainly confuse the jury.

**IV.      MEYER FAILS TO CONSIDER THE REQUIREMENTS OF 35 USC § 287(a)**

The Meyer report must be stricken to the extent it seek royalties for alleged infringement prior to the filing of the complaint.  Patentees must mark their patented products with the patent number or give proper actual notice in order to seek recovery of pre-suit damages.  35 USC § 287(a).  The patentee has the burden of pleading and proving it complied with the marking and actual notice provisions of § 287(a).  *Maxwell v. J. Baker, Inc*., 86 F.3d 1098, 1111 (Fed. Cir. 1996).

To prove compliance with the marking requirement, a patentee must prove it consistently marked substantially all of its patented products and it was no longer distributing unmarked products. *American Medical Systems v. Medical Engineering Corp.*, 6 F.3d 1523, 1538 (Fed. Cir. 1993).  Actual notice under § 287(a) requires an affirmative communication to the alleged infringer of a specific charge of infringement by a specific accused product or device.  See *Amsted Indus. v. Buckeye Steel Castings Co.,* 24 F.3d 178, 187 (Fed. Cir. 1994).

Here, Briese alleged (but did not produce supporting documentation as discussed above) that it sells umbrella reflectors and that Briese umbrella reflectors have been sold in the US since at least 2001.  Second Amended Complaint ¶ 12 [doc #1].  Plaintiffs' patent label document they produced, document BH 6863, plainly shows that it does not include the patent-in-suit.  See document BH 6863, Schewe Decl. Ex. 14.  While the label includes many numbers including international patent numbers, the patent-in-suit US Patent No. 5, 841,146 is not included.

There is nothing from Plaintiffs (or Meyer) to show compliance with 35 USC § 287(a). The Meyer report ignored this statutory requirement.  Plaintiffs' document BH 6863 is not included under the documents considered by Meyer.  See Meyer Exh. B "Documents Considered".    Thus,  under 35 USC § 287(a), the Meyer Report should be stricken to the extent

it is seeking alleged royalties for alleged infringement prior to the November 25, 2009 filing date

of the instant suit.[1]

## V.    MEYER'S REFERENCES TO DEFENDANTS COLLECTIVELY MUST BE STRICKEN BECAUSE PLAINTIFFS DO NOT AND CANNOT RELY ON A JOINT LIABILITY THEORY

There is no joint liability or joint and several liability at issue for Plaintiffs' patent case.

Meyer's repeated reference to "Defendants" is another error.  Plaintiffs' remaining patent case is

styled as direct infringement contentions only.  But, they did not allege and did not include in

their contentions that any individual defendant is an alter ego of the corporate defendant.

Without such timely factually supported allegations as required by FRCP Rule 8 and basic due

process, the issue is not raised and is not part of Plaintiffs' remaining patent case.

The Federal Circuit has emphasized the corporate entity deserves respect and that applies

here.  The corporate veil does shield a company's officers and other individuals from personal

liability for direct patent infringement that the individuals commit in the name of the corporation,

unless the corporation is the individual's alter ego.  See *Wordtech Sys., Inc. v. Integrated*

*Networks Solutions, Inc.*, 609 F.3d 1308, 1313 (Fed. Cir. 2010) (quoting *Wechsler v. Macke Int'l*

*Trade, Inc.*, 486 F.3d 1286, 1295 (Fed. Cir. 2007));  *Manville Sales Corp. v. Paramount Sys.,*

*Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990) ("Although the facts support the conclusion that the

officers had knowledge of their acts, these acts were within the scope of their employment and

thus were protected by the corporate veil.").  District courts have dismissed claims for direct

infringement under § 271(a) based on alter ego liability where alter ego or piercing the corporate

---

[1] The corporate entity Briese Lichttechnik Vertriebs GmbH initially filed suit for infringement in August 2009, Civil Action 09 Civ 7279 but the entity dismissed that action because it did not own the patent-in-suit.

8

veil is not pled.  See *McCree v. Goldman*, 2012 US Dist LEXIS 36793, at *11-*12 (ND Cal.

2012) (dismissing with prejudice claim for direct infringement against defendant's chairman);

*Carotek, Inc. v. Kobayashi Ventures, LLC*, 2012 US Dist LEXIS  90105, at *93-*95 (SDNY

2012) (citing *Wordtech* finding piercing the corporate veil to be inappropriate for the individual

defendant Dechman).  The Briese Plaintiffs did not allege even the bare conclusory allegations

that the *McCree* court found inadequate.  The Meyer report must be stricken to avoid any

confusion for the jury.


## VI.    CONCLUSION

The Court should grant this motion and exclude testimony and strike the report of

Plaintiffs' expert Christine Meyer.

Respectfully submitted,


Dated:  April 3, 2013                    By:    /s/ Edward C. Schewe_____
                                                Edward C. Schewe (pro hac vice)
                                                **SCHEWE & ASSOCIATES**
                                                1600 Rosecrans Avenue, 4th Floor
                                                Manhattan Beach, California  90266
                                                Telephone:  (310) 321-7892
                                                Facsimile:   (310) 321-7891

                                                Edward P. Kelly
                                                **TIAJOLOFF & KELLY LLP**
                                                Chrysler Building - 37th Floor
                                                405 Lexington Avenue
                                                New York, New York 10174
                                                Telephone:  (212) 490-3285
                                                Facsimile:   (212) 490-3295

                                                Attorneys for Defendants
                                                Key Lighting, Inc., et al.